## STATE OF CONNECTICUT *vs.* JOSEPH R. CARTY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued June 4th—decided June 27th, 1935.

*Adrian W. Maher,* with whom, on the brief, was *Edward J. Maher,* for the appellant (defendant).

*William H. Comley,* for the appellee (the State).

AVERY, J. The accused was brought to trial upon an information under General Statutes, § 6047, charging that on September 10th, 1934, in Trumbull, he did operate a motor vehicle upon the Newtown Turnpike, a public highway, with such gross and wilful misconduct and negligence that he caused the death of one Kathleen Richter. He elected to be tried by the court and after trial was found guilty and sentenced accordingly. The material facts as found are as follows: On September 10th, 1934, at about 5.30 p.m., the accused

was operating a Chevrolet sedan, weighing a ton and a half, in a southerly direction in the town of Trumbull on the highway known as the Bridgeport-Newtown Turnpike. This is the main artery between Bridgeport, Newtown and Danbury. It consists of two strips of concrete lanes each approximately ten feet in width. On the westerly side is a hardened shoulder approximately seven feet in width; on the easterly side is a hardened shoulder approximately sixteen feet in width. A brook runs under the highway through a culvert, the heads of which appear on each side in direct line with the highway fence and are approximately a foot higher than the surface of the road. On the east side the banks of the stream are about two feet in height and on the west side from four to six feet in height.

Two boys, Arthur Frank, aged ten years, and Bobbie Richter, somewhat younger, were fishing in the brook where it was crossed by the highway, Arthur being on the westerly side of the highway and Bobbie on the easterly side. While they were fishing and about a quarter of an hour before the injury occurred, Kathleen Richter, the deceased, aged about eight years, and her brother, Tommy, aged ten, joined them at the brook. Tommy began fishing on the west side with Arthur, and Kathleen stood watching them for a few moments, after which she crossed to the easterly side, and joined Bobbie, who had cried out that he had caught a fish. A few moments later, at an exclamation from Tommy that he had caught a fish, she turned and started across to the westerly side, at a fast walk or a slow run. As she proceeded and while just west of the center of the concrete road, she was struck by the automobile driven by the defendant, carried upon the front of the car for over seventy feet and then fell off on the road, while the car continued on and finally came to a stop about three hundred feet from

the point of collision. She was almost instantly killed. The defendant had driven his car from the north, having a clear and unobstructed view of the road as it crossed the brook for a distance of at least three-tenths of a mile and for a considerable distance beyond. He was accompanied by a friend sitting beside him reading a book. The defendant was driving at a rate estimated at between twenty-five and thirty-five miles an hour upon the right-hand side of the road. As he approached the bridge, the girl Kathleen and the boy Bobbie were clearly within sight. The marks upon his car showed that the child was struck by the left front of the radiator. As he approached the bridge he did not see any of the children; he did not see the child Kathleen either before or after he struck her until his car had passed on a considerable distance, and his friend looking back along the road and seeing the child lying thereon, told him that he had struck a child. There was no traffic in the road, or any circumstance which distracted the attention of the driver or in any way justified or excused his failure to keep any watch whatever upon the road over which he was driving.

Upon these facts, the trial court concluded that the defendant had operated his car upon the highway in the presence of others who were within his vision and whom he should have seen, without seeing or making any attempt to see what was in the road directly ahead of him and was therefore guilty of gross and reckless misconduct and negligence, and that such operation caused the death of the child.

The accused has asked for certain corrections and additions to the finding, the principal effect of which would be to show that the deceased was not in sight as the accused drove down the highway and that she came suddenly from the west side instead of the east side before she was struck. These matters were in

dispute upon the testimony, but there was testimony supporting the finding as made by the trial court and no material change can be made in it. General Statutes, § 6047 provides: "Any person operating a motor vehicle upon the highways of this State, who shall, in consequence of his intoxication or of any gross or wilful misconduct or negligence, cause any loss of life or the breaking of a limb, shall be" punished, etc. The language of the statute is in the alternative; it makes criminal and provides a penalty if death or the loss of limb is in consequence (1) of the operator's intoxication; (2) of his gross misconduct; (3) of his gross negligence; or (4) of his wilful misconduct or negligence. There is no claim by the State that death was the result of intoxication; nor is there any basis in the evidence of wilful misconduct or negligence. "Wilful misconduct is intentional misconduct." *Menzie* v. *Kalmonowitz,* 107 Conn. 197, 199, 139 Atl. 698; *Gonier* v. *Chase Companies, Inc.,* 97 Conn. 46, 55, 115 Atl. 677. The decisive inquiry is whether the trial court was warranted in finding the accused guilty of gross negligence within the meaning of the statute. In *State* v. *Goetz,* 83 Conn. 437, 441, 76 Atl. 1000, we approved a charge that gross negligence "imports a thoughtless disregard of consequences." In *State* v. *Campbell,* 82 Conn. 671, 677, 74 Atl. 927, we approved a charge defining it as meaning something stronger than mere negligence; as "a wantonness and disregard of the consequences which may ensue; an indifference to the rights of others." As used in this statute, the term "gross negligence" imports negligence of a materially greater degree than the mere want of ordinary care; inattention or carelessness of such character as to signify an indifference to the rights of others. Whether conduct is of such character as to come within

the prohibition of the statute must often depend upon the particular circumstances of the situation presented.

The finding shows that the accused was driving his automobile at a rapid rate of speed in broad daylight on a main highway with such inattention to conditions in and about the road ahead of him, when he had full opportunity for observation and there was nothing to interfere therewith, as to justify the trial court in concluding that his conduct was grossly negligent in violation of the statute. If, in pursuance of the assignment of error that upon all the evidence the guilt of the defendant was not proven beyond a reasonable doubt, we turn to the evidence, we find no facts which, in view of the finding of the trial court, we can regard as proven, which would in any way affect this result.

There is no error.

In this opinion the other judges concurred.