HAROLD DECKER *v.* DAVID W. ROBERTS.

DAVID W. ROBERTS *v.* HAROLD DECKER.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued December 7, 1938—decided January 5, 1939.

*Lester W. Schaefer,* with whom was *Jonathan F. Ells,* for the appellant (Roberts).

*Thomas J. Wall,* for the appellee (Decker).

AVERY, J.  These two cases were tried together. They were brought to recover damages for injuries claimed to have been caused in a collision of two automobiles at an intersection.  Independent actions were brought by both parties.  In one action, the plaintiff was Harold Decker and the defendant David W. Roberts, in the other the parties were reversed.  The jury returned verdicts in favor of Decker in both cases and Roberts has appealed.

Taking the view of the evidence most favorable to Decker, the jury might reasonably have found the facts as follows:  The Colebrook South Sandisfield Road runs north and south with a hard macadam surface twenty feet in width and a shoulder on the east side three and one-half feet and upon the west six feet in width.  It is intersected by Sandy Brook Road which runs east and west, a dirt road fourteen feet in width which widens out in a triangular shape at the intersection so that where it meets the macadam it is thirty-two feet wide.  The entire width of this triangle at the intersection is worked and suitable for vehicular traffic. Wheel marks, however, show that the traffic to and from the south part of the Colebrook Road follows a southerly lane and traffic to and from the north part of that road follows a northerly lane, so that the lines of actual traffic form a Y at the intersection.  On October 30, 1935, at about eleven in the morning Roberts was driving an automobile northerly upon the Colebrook

Road. There is a sign three hundred feet south of the intersection marked "cross-road." As Roberts reached the sign he was traveling at a speed of from fifty to sixty miles an hour. As he approached the intersection, traveling about in the center of the roadway, he reduced speed and at a distance of about one hundred and five feet therefrom applied his brakes and shortly before the collision swerved sharply to his left. Upon the southeast corner of the intersection there is a bank six feet in height, and seventeen feet south of the Sandy Brook Road and fourteen feet from the macadam on the Colebrook Road, there is a building formerly used as a schoolhouse. Approaching the intersection the grade upon the Colebrook Road is down and on the Sandy Brook Road is up. A vehicle proceeding westerly in the center of the Sandy Brook Road and seventeen feet north of the macadam of the Colebrook Road is visible to a vehicle approaching from the south on the Colebrook Road for a distance of three hundred feet. From the Colebrook Road a view of a vehicle on the Sandy Brook Road proceeding west on a line south of the center is obscured by the bank and a vehicle close to the bank is not visible until it has reached a point beyond the line of the bank.

Decker was proceeding west on the Sandy Brook Road at a speed of about twenty miles an hour. As he approached the intersection, he kept to the left of the center line of the Sandy Brook Road and to the left of the center line of the south part of the traveled way upon that road and close to the bank. According to his own testimony, he did not see the approach of the Roberts car before reaching the center of the pavement on the Colebrook Road when the Roberts car was right upon him, just before the two cars collided, and he stated that the speed of the Roberts car when he saw it was sixty miles per hour. After the collision the

Roberts car was in the intersection on the west side of the highway headed in a northwesterly direction, its right rear wheel and fender on the macadam, the other three wheels on the shoulder, the left rear wheel against a grass triangle in the intersection west of the Colebrook Road. The Decker car was headed about southwest and was a little west of the center of the Colebrook Road with all of its four wheels on the macadam surface. The two cars were about four feet apart and their position was such that if the Decker car had been moved straight ahead from where it was standing its right front wheel would have run into the right rear wheel of the Roberts car. Behind the Decker car there were two tire marks starting on the Sandy Brook Road and continuing out on to the macadam. These marks were eight feet long and the Decker car was three feet beyond the point where they ended. The right mark was about in the center of the south traffic lane of the Sandy Brook Road at the intersection and the left wheel mark was to the left of the center. The front end of the Decker car was damaged and the right side of the Roberts car.

Considering the location of the cars after the collision with reference to the intersection and to each other and the tire marks behind each car, together with the other evidence, the jury could reasonably have found that the speed of the Roberts car at a point three hundred feet south of the intersection was fifty to sixty miles per hour but that before reaching the intersection the brakes were applied and that the speed of both cars had been reduced at the point of collision. The jury might also reasonably have concluded that as Roberts approached the intersection he knew it was there because he saw the sign; and the jury could have inferred that when three hundred feet away he could see the intersection, and, as he approached, could have

seen that on the southeast corner it was a blind intersection.

In the complaint in the case of *Decker* v. *Roberts* the plaintiff alleged that Roberts was negligent in several particulars and that under the circumstances his conduct was so grossly negligent as to be wanton. The complaint in the case of *Roberts* v. *Decker* alleged negligence. At the trial the court submitted to the jury two interrogatories which were answered in the affirmative, the answers stating that the conduct of Roberts constituted wanton misconduct and was a substantial factor in causing the collision. The first question raised upon the appeal of Roberts from the ruling of the trial court on the motions to set aside the verdicts, is whether the jury could reasonably have reached the conclusion that the conduct of Roberts was such as to constitute wanton misconduct. "Wanton misconduct is more than negligence, more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action." *Menzie* v. *Kalmonowitz,* 107 Conn. 197, 199, 139 Atl. 698; *Bordonaro* v. *Senk,* 109 Conn. 428, 431, 147 Atl. 136. There was no traffic on the highway at the time, the day was clear, and the surface of the macadam was dry. There is no evidence in the case from which the jury could have reasonably inferred that the conduct of Roberts was such as to indicate a reckless disregard of the just rights or safety of others or of the consequences of action. On the contrary, the only reasonable inference which the jury could have drawn from the evidence was that Roberts tried to avoid a collision.

It is apparent that Roberts was unaware of the danger from the Decker car until too late to avoid it. While the jury might have found from the evidence that Roberts was driving at an excessive and negligent

rate of speed as he approached the intersection under all the circumstances and was negligent in failing to slacken speed and bring his car under control as he approached and entered the intersection, considering that a car might be coming into the intersection on his right from the Sandy Brook Road and if the two cars reached the intersection at approximately the same time such car would have the right of way, there is no basis in the evidence for a finding by the jury of wanton misconduct. The case of *Vanderkruik* v. *Mitchell,* 118 Conn. 625, 631, 173 Atl. 900, involved a construction of the so-called guest statute, General Statutes, § 1628, restricting recovery by a guest in an automobile to situations where the defendant has been guilty of heedless and reckless disregard of the rights of others. The case however is upon its facts quite similar to the case under discussion. We there held that, although the evidence disclosed that the primary cause of a collision was the thoughtless and careless maintenance of high speed at a point where due care required that it be reduced, yet that the evidence did not warrant a finding by the jury of reckless operation within the meaning of the statute. It follows that the motion to set aside the verdict in the case of *Decker* v. *Roberts* should have been granted.

Certain other assignments of error require discussion. On behalf of Roberts, the trial court was requested to submit to the jury four written interrogatories, whether the proximate cause of the collision was (1) wanton misconduct of Roberts, (2) his gross negligence, (3) his negligence, (4) the contributory negligence of Decker. The court refused to submit the interrogatories asked and submitted the two interrogatories to which we have referred. In this ruling there was error. Roberts was entitled in this case to have interrogatories numbers one, three and four or their

substance submitted to the jury. In the case of *Decker* v. *Roberts,* the plaintiff appears to have attempted to set up in one count of the complaint three distinct causes of action: first, negligence; second, gross negligence; and third, wanton misconduct. In so far as the complaint attempted to allege a cause of action based upon gross negligence it added nothing to the allegations of negligence. While the term gross negligence appears in certain criminal statutes and proceedings, *State* v. *Carty,* 120 Conn. 231, 234, 180 Atl. 287; *State* v. *Goetz,* 83 Conn. 437, 441, 76 Atl. 1000; *State* v. *Campbell,* 82 Conn. 671, 677, 74 Atl. 927, gross negligence has never been recognized in this state as a separate basis of liability in the law of torts. We have never recognized degrees of negligence as slight, ordinary, and gross in the law of torts. *Dickerson* v. *Connecticut Co.,* 98 Conn. 87, 89, 118 Atl. 518. It follows that the plaintiff's complaint really alleged but two causes of action, one based upon negligence and one based upon wanton misconduct. Contributory negligence is not a defense to a cause of action based not on negligence but on reckless misconduct. *Heslin* v. *Malone,* 116 Conn. 471, 475, 165 Atl. 594; *Bordonaro* v. *Senk,* 109 Conn. 428, 433, 147 Atl. 136; *Grant* v. *MacLelland,* 109 Conn. 517, 521, 147 Atl. 138; *Lionetti* v. *Coppola,* 115 Conn. 499, 503, 161 Atl. 797. In a complaint of this character, alleging in one count two distinct causes of action, error in the instructions of the court upon one cause of action would not result in a new trial if there were no error in the court's instructions upon the other; *Heslin* v. *Malone,* 116 Conn. 471, 474, 165 Atl. 594; *Barbieri* v. *Pandiscio,* 116 Conn. 48, 53, 163 Atl. 469; *Ziman* v. *Whitley,* 110 Conn. 108, 115, 147 Atl. 370; it follows that the defendant's request that interrogatories be propounded to the jury in order that the basis of their verdict might be ascertained was

one of right and should have been granted by the court. *Wladyka* v. *Waterbury,* 98 Conn. 305, 313, 119 Atl. 149; *Callahan* v. *Jursek,* 100 Conn. 490, 493, 124 Atl. 31; *Ziman* v. *Whitley,* 110 Conn. 108, 115, 147 Atl. 370.

In its instructions to the jury the trial court explained to them in considerable detail the meaning of the term gross negligence, and informed them that, if they found such negligence, contributory negligence upon the part of the plaintiff would not constitute a defense. In this connection among other things the court informed the jury, "If you find that at the time Mr. Roberts came to the intersection of the highways the speed of his car was such that he was powerless to stop the same in time to avoid the injury to Mr. Decker, who was using the highway, that was sufficient to constitute gross negligence, and the defense of contributory negligence would not be available to Mr. Roberts under such circumstances." The effect of this statement could not have been otherwise than to have confused the minds of the jury as to the basis necessary to determine liability. The jury could not have understood this statement otherwise than as meaning that unless Roberts was able to stop in time to avoid the accident he was liable as a matter of law for the consequences thereof. This was prejudicial and erroneous.

In instructing the jury as to the duty of Decker in entering the intersection the trial court stated: "It is alleged that Mr. Decker turned to his left at the intersection and did not keep to the right of the center of the intersection of the highways. Now, of course, it was the duty of Mr. Decker in the intersection to keep to the right of the intersection. If there was any place in that intersection which distinctly divided the intersection so that it would not be practicable to keep to

the right of the center of the intersection in accordance with the law as I have stated it to you, then of course, Mr. Decker would be entitled to abide by that situation as he found it." The effect of this instruction was to tell the jury that they might determine the obligation of Decker in view of the practical situation which confronted him. This was error. In *Andrew* v. *White Bus Line Corp.*, 115 Conn. 464, 466, 161 Atl. 792, we said: "The statute (§ 1639) prescribes in unequivocal terms what course shall be pursued by a vehicle in turning left in an intersection; it affords plain and positive directions as to what each person shall himself' do and may expect of others, which are the vital purposes of traffic regulations. It is as subversive of these purposes to hold approximate compliance a substitute for full conformity as to subject the statutory standards and requirements to exceptions based upon the judgment of the individual as to what is reasonable and practicable."

Roberts also assigns as error the failure of the trial court to charge as matter of law that Decker was negligent in that he drove to the left of the point of intersection of the two roads. As we must test the charge, not by the evidence, but by the claims of the parties as to the facts proved, and as the finding states that Decker offered evidence to prove and claimed to have proved that he did not pass to the left of the point of intersection, there is no basis upon the face of the record for this assignment. However, our examination of the evidence in connection with the motion to set the verdict aside discloses that upon the oral testimony it was undisputed that Decker did pass to the left of the point of intersection, and we are not able to see any basis for his claim to the contrary. If the fact was undisputed, the court should have informed the jury that this was a violation of the statutory rule,

General Statutes, Cum. Sup. 1935, § 636c, and constituted negligence in and of itself; and, if the jury found that this negligence materially contributed to the injury to Decker, it would constitute contributory negligence which would bar him from recovery in the action of *Decker* v. *Roberts* so far as that action was based upon negligence; and, in the action of *Roberts* v. *Decker,* would constitute negligence which would entitle Roberts to recover, if the jury found this negligence a substantial factor in causing the collision and that there was no contributory negligence upon the part of Roberts. *Pietrycka* v. *Simolan,* 98 Conn. 490, 499, 120 Atl. 310.

There is error and a new trial is ordered in both cases.

In this opinion MALTBIE, C. J., HINMAN and BROWN, Js., concurred; JENNINGS, J., concurred in the result, but was of opinion the action of the trial court in refusing to set aside the verdict should be sustained.