ROSE VIRELLI *v.* BENHATTIE, INC.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued January 6—decided February 17, 1959

*S. Victor Feingold,* for the appellant (plaintiff).

*Walter J. Sullivan,* with whom, on the brief, was *Robert E. Courtney, Jr.,* for the appellee (defendant).

DALY, C. J. The plaintiff alleged in her complaint that injuries received by her were caused by the negligence of the defendant and its officers, agents and employees. The jury returned a general verdict for the defendant. The plaintiff appealed from the judgment rendered thereon.

The plaintiff offered evidence to prove and claimed that she had proved these facts: On June 7, 1952, the defendant was the owner of a tenement house at 16-18 Williams Street in Hartford. The building, which faced west, contained six apartments, all occupied. The plaintiff was a tenant, having had one of the apartments for about twenty years. Alney Sheldon and his wife were also tenants. The defendant retained the control of the rear yard of the premises and it was used by all the tenants. On June 7, 1952, at about 9:30 a.m., the plaintiff was in this rear yard, hereinafter referred to as the yard. Sheldon came out of the house and walked through the yard to a parking lot located east, or in the rear, of the defendant's property. The defendant did not own the parking lot. The level of it near the east boundary of the defendant's property was about two feet above the yard. Mrs. Sheldon's car was in the parking lot. Sheldon got into the car and, while driving it from the parking lot down the incline, along the north side of the yard, lost control of the car, so that it crashed into the back porch of the defendant's tenement house. As a result of the impact, part of the porch collapsed, striking the plaintiff and knocking her to the ground. She sustained multiple bodily injuries. The distance which the car traveled from the parking lot to the point of impact was thirty-six feet.

The plaintiff also claimed to have proved the following: The entire area of the defendant's property adjacent to the parking lot had been uninclosed for a long time. The defendant had not erected or maintained any barrier to prevent the movement of automobiles from the parking lot to the yard. A wooden fence along the east boundary of the defendant's property could have been built at a cost of $100.

Logs were also available to the defendant and could have been used to prevent cars from entering the yard from the parking lot. The defendant provided no garages or spaces for parking cars. No private driveway leading from a public street directly to the yard was constructed. The defendant did not give any tenant express permission to park cars in the yard. Employees of the owner of the parking lot and persons who lived in the neighborhood were permitted to park their cars in the parking lot. The yard was used by the defendant's tenants and their business and social visitors as a common approach to the tenement house. It was used almost daily by all the tenants in connection with their ordinary, contemplated and customary family needs. It was used, also, by the tenants and their friends as a recreation and play area. It was customary for children of all ages to use the parking lot and the yard as a recreation area and playground. The Sheldon car and that of another tenant, Thomas Ray, had on various occasions been driven from the parking lot into the yard. At different times, they were parked all night in the yard. When the plaintiff was injured, Sheldon was eighty-two years old. He had been retired from work for a long time. He did not have a driver's license. His wife was employed and customarily left her car in the parking lot and walked to work. Frequently he had driven the car up and down the slope as a pastime. The president of the defendant had actual notice that the Ray and Sheldon cars were being driven into the yard from the parking lot, thereby making the yard unsafe for use by other tenants. He appreciated the danger involved. The defendant had a reasonable opportunity to prevent or control the conduct and activity of those who drove cars into the yard. Nevertheless,

it did nothing to correct or put a stop to such activities. The defendant's negligence continued down to the time the plaintiff was injured. Its negligence was a proximate cause of the plaintiff's injuries and a substantial factor in producing them.

The defendant offered evidence to prove and claimed that it had proved facts as follows: The yard was forty-two and one-half feet wide, measured from north to south. The easterly boundary was twenty-six feet east of the rear porch. The ground was substantially level for a distance of fifteen feet to the rear of the porch and then sloped upward at a grade of 18 to 20 per cent. The yard was not designed or intended for parking automobiles. The only entrance to the parking lot was through a private driveway from Walnut Street. The Sheldon and Ray cars were occasionally parked in the parking lot. On one occasion, throughout Ray's eight-year tenancy, his car was driven into the yard. On occasion, Sheldon drove his wife's car into the yard. Once, a roofing contractor drove his truck into the yard to facilitate the tarring of the roof of the tenement house. The conduct and activities of the operators of the cars did not expose the tenants or others using the yard to an unreasonable risk of injury and harm. The continued maintenance by the defendant of the yard without any barrier at or near the east boundary did not constitute, and did not create, an unsafe, hazardous and dangerous condition for tenants and others using the yard. The defendant did not fail to exercise reasonable care to maintain the yard in a reasonably safe condition. If the defendant failed to exercise reasonable care to keep the premises reasonably safe in any one or more of the ways specified in the complaint, that failure was not the proximate cause of the plaintiff's

injuries. The sole proximate cause of the plaintiff's injuries was the conduct of Sheldon when he drove the car into the yard.

The plaintiff asserts that the court erred in charging the jury on the doctrine of intervening negligence. She bases this assertion on her contention that by its charge the court "allowed the jury to consider the conduct of Sheldon as a superseding cause of the harm to the plaintiff when there could not reasonably be any issues of intervening negligence, intervening cause or superseding cause as framed by the substituted complaint and answer and upon the evidence." She claims that the negligence of Sheldon and that of the defendant were, at most, concurrent and that under the doctrine of concurrent negligence the defendant was liable. In her substituted complaint, she alleged that the automobile of Sheldon's wife "was parked on or near the adjoining lot . . . at or near the top of the incline and facing the tenement house, and the said Alney Sheldon, was then and there about to move the said car when it rolled down the incline and crashed into the back porch of the tenement house, whereby the supporting beams and bannister and floor boards of the said porch were caused to collapse and to be ripped and torn from their fastenings and to strike and fall upon the plaintiff." The plaintiff does not claim, however, that she offered evidence to prove and proved that her injuries were caused by the rolling of the car down the incline. On the contrary, she offered evidence to prove and claimed to have proved that "Mr. Sheldon got into the car and drove it from the parking lot down the incline along the north side of the defendant's back yard, and while descending he lost control of the automobile and it crashed into the back porch." As shown by the finding, the defendant

offered evidence to prove and claimed to have proved that it "did not fail to exercise reasonable care to have and to maintain the rear yard of its tenement house in a reasonably safe condition"; that "[i]f the defendant failed to exercise reasonable care to keep the premises reasonably safe in any one or more of the ways specified in the plaintiff's complaint, such failure was not the proximate cause of the plaintiff's injuries"; and that "[t]he sole proximate cause of the plaintiff's injuries was the conduct of Mr. Sheldon when he drove his car into the back yard." A charge is tested by the claims of proof advanced by the parties. *Lopes* v. *Connecticut Light & Power Co.,* 145 Conn. 313, 315, 142 A.2d 135.

Where a person is injured and it is claimed that the negligence of each of two parties is involved, one may defend on the ground that the other's negligence was the sole proximate cause of the injury. *Ferino* v. *Palmer,* 133 Conn. 463, 468, 52 A.2d 433. Of course, we have no way of knowing whether the jury, by its general verdict, found that the defendant was negligent in any respect alleged in the complaint. If, however, the jury found that the defendant was negligent in some manner as alleged in the complaint, the determination whether negligence of Sheldon was such a superseding cause as to prevent the antecedent negligence of the defendant from being a substantial factor in producing the plaintiff's injuries was essential to a finding as to the defendant's liability. That determination was a question of fact for the jury. "It was therefore the court's duty to adequately explain to the jury the nature of superseding cause as related to the circumstances of this case by directions sufficient to bring them to a legal conclusion." *Corey* v. *Phillips,* 126 Conn. 246, 254, 10 A.2d 370. "The tests of a charge are its ac-

curacy in law, its adaptability to the issues, and its sufficiency as a guide to the jury in reaching a correct verdict. . . . A charge must be judged in its entirety and not by critical examination of isolated words, phrases and passages culled from context." *D'Addario* v. *American Automobile Ins. Co.,* 142 Conn. 251, 254, 113 A.2d 361. The court charged the jury fully and correctly on the doctrines of proximate cause, concurrent negligence and intervening negligence. Consequently, we have no occasion to discuss the plaintiff's additional claims of error, including those in which she asserts that if the doctrine of intervening negligence had a place in the case the court erred in failing to give additional specific instructions.

There is no error.

In this opinion the other judges concurred.