**Patricia A. SCHOLZ, Administratrix, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 10078.**

United States District Court
D. Connecticut.

July 17, 1967.

Edward B. Winnick, of Winnick & Winnick, New Haven, Conn., for plaintiff.

Samuel J. Heyman, Asst. U. S. Atty., New Haven, Conn. (Jon O. Newman, U. S. Atty., Hartford, Conn., on the brief), for defendant.

TIMBERS, Chief Judge.

## QUESTIONS PRESENTED

In this action under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., brought to recover for the alleged wrongful death of plaintiff's decedent claimed to have been caused by defendant's negligence in the supervision of weapons testing under civilian contract, the essential questions presented by defendant's motion for summary judgment, pursuant to Rule 56, Fed.R. Civ.P., are whether the government and the civilian contractor were in a master and servant relationship, and whether any claim of negligence on the part of the government's conceded employee, Thomas Girkout, is not barred by supervening and contributory negligence on the part of others. The Court is of the opinion that the present state of the underlying proof bearing on the questions raised by defendant's motion shows the existence of genuine issues of material fact critical to a resolution of the ultimate issue of liability. Accordingly, the Court holds that there is a genuine need for trial, and the instant motion for summary judgment is denied.[1]

## FACTS

The undisputed material facts are as follows.

In July of 1963, a government agency, the Springfield Armory, contracted with the Olin Mathieson Corporation (hereinafter "the company") to make certain weapons tests for the government at the company's Connecticut firing range. The government was to furnish weapons, targets and directions for test procedures, and the company was to provide the gunners. The government also provided a "technical supervisor", Thomas Girkout.

The tests commenced and were conducted on the company's 600 yard concrete range. Firing was carried on from a blockhouse at one end. Three steel doors along one side of the range were used to gain access to targets set at various distances from the blockhouse. Among other safety devices, the company had installed a flashing red light which would start operating when any of the steel doors onto the range were open, and also an intercom system connecting the firing end with each of the three door areas.

On July 16, 1963, the targets were not functioning properly. Manual adjustment was required after each firing of

---

1. See Dressler v. MV Sandpiper, 331 F.2d 130, 132–133 (2 Cir. 1964).

five rounds, in turn necessitating frequent use of the steel doors. Arthur E. Stevens, a company gunner, was firing; Girkout was adjusting the 100 yard target; and Raymond M. Scholz, Jr., plaintiff's decedent, another company gunner, was adjusting the 600 yard target. For the sake of convenience, Girkout kept his door propped open and his switch was taped so that the red light would not be always flashing; however, the draft caused by that open door rattled the Scholz door, causing the red light to flash anyway, without regard to anyone's presence or absence in the target areas. The result was that Stevens had to fire even when the danger signal was flashing, although the intercom was used to ensure that it was safe for him to commence or recommence firing. Just prior to the last rounds, Scholz called Stevens to let him know that he was going in to check the 600 yard target. When Scholz later sounded the "all clear", Stevens waited a minute and then fired the last five rounds. The red light was flashing. After the test was completed, Stevens could get no response from Scholz over the intercom. When Stevens and Girkout went down to check, they found the door open and Scholz shot dead behind the target.

## CLAIMS OF THE PARTIES

Plaintiff's complaint is in two counts, essentially alleging negligence on the part of the government in failing properly to supervise the weapons testing through its agents and employees. It is contended that there are genuine issues of material fact with respect to the relationship created between the government and the company by virtue of the contract of July, 1963, and also with respect to the defenses of supervening and contributory negligence interposed in connection with the allegations of negligence on the part of the government supervisor Girkout.

Defendant contends that as a matter of law the government is not liable for any negligence of the company's employees, since the government and the company were not in a master-servant relationship, and specifically because Girkout, as a mere technical supervisor, had no control over the gunners' safety practices or the basic safety features of the company's firing range. It is also urged as a matter of law that no liability arises from any negligence in Girkout's own conduct as a government employee, by reason of the claimed supervening negligence on the part of Stevens and contributory negligence on the part of decedent Scholz.

## EXISTENCE OF A MASTER-SERVANT RELATIONSHIP

■ In this Federal Tort Claims Act case, the sufficiency of plaintiff's claim is to be tested by rules governing liability of a private individual under the law of the State of Connecticut, the place where the accident at issue occurred.[2]

It is the government's principal contention that only a very restricted supervisory power was reserved to its agents under the contract with the company; that, for example, it was never intended that Girkout would supervise safety measures. It is urged that a company thus at best partially controlled should not be considered as a "servant" for the purpose of imposing vicarious liability upon the government, since a master-servant relationship is said to involve a power to control the manner of performance of the very work in which the causal carelessness arose, rather than a bare general power to control work.[3]

■ In Connecticut, however, the decisive test of the master-servant relationship in this regard has been stated to be whether the right to the general con-

---

2. See 28 U.S.C. § 2674; United States v. Muniz, 374 U.S. 150, 153 (1963).

3. As authority for this proposition, defendant relies upon Gallagher v. United States, 206 F.2d 177, 179 (2 Cir. 1953), in which the law of the State of New York was applied.

trol has been reserved.[4] If it is clear that defendant rejected any responsibility over safety procedures from the very start, renouncing such duties by the very terms of the contract, the critical relationship between the parties thereto could not be made out; indeed, deliberate and express rejection of such duties would have been an exercise of governmental discretion which would have precluded plaintiff from seeking recovery under the Federal Tort Claims Act.[5] In the instant action, however, plaintiff does not concede that the contract even implicitly contemplated abdication by the government of any responsibility for safety measures as a part of testing procedures to be carried out under Girkout's "technical" supervision; moreover, it is plaintiff's position that the firing range employees considered Girkout to be in actual command over all matters in connection with the test.[6]

■ In short, whatever the legal test to be applied in determining the presence or absence of an employment relationship or of a duty of safety supervision, the Court is confronted with genuine and critical issues of material fact. At the very least, the actual nature of the understanding reached by the contracting parties requires further elucidation.

## DEFENSES TO NEGLIGENT CONDUCT BY GIRKOUT

■■ Even if Girkout's activities on the firing range the day of the fatal accident constituted negligence, defendant maintains that no liability results to it for the reason that such negligence was not the proximate cause of the injury to plaintiff's decedent. That Girkout left a door open is said not to constitute proximate cause, since Stevens' decision to fire during the flashing of the warning light amounted to supervening negligence. But in Connecticut proximate cause may be found if the original negligence was a "substantial factor" in producing the injury, perhaps even if the injury could not reasonably have been anticipated.[7] Since Girkout's open door nullified the significance of the warning light, and since Stevens did make use of the intercom system in attempting to ensure that the target area was cleared, negligence on the part of Stevens is not a foregone conclusion; and if Stevens was negligent, under the circumstances surrounding the accident there is at least a genuine issue of fact as to whether such negligence was simply "concurring" negligence rather than that supervening neg-

4. See, e. g., Kaliszewski v. Weathermaster Alsco Corp., 148 Conn. 624, 629, 173 A. 2d 497, 500 (1961); Bieluczyk v. Crown Petroleum Corp., 134 Conn. 461, 465, 58 A.2d 380, 383 (1948); Thompson v. Twiss, 90 Conn. 444, 447, 97 A. 328, 330 (1916). And it should be noted with respect to the divergent New York rule mentioned in Gallagher v. United States, supra note 3, that while there has been some indication that in New York even express reservation of control over safety matters would be insufficient to create a master-servant relationship absent actual direction of performance, see Wallach v. United States, 291 F.2d 69, 70–71 (2 Cir. 1961), in Connecticut the simple right to control appears sufficient, with actual direction immaterial. See Kalisewski v. Weathermaster Alsco Corp., supra; Bourgeois v. Cacciapuoti,

138 Conn. 317, 321, 84 A.2d 122, 124 (1951).

5. See 28 U.S.C. § 2680(a); Blaber v. United States, 332 F.2d 629, 631 (2 Cir. 1964); cf. Dalehite v. United States, 346 U.S. 15 (1953).

6. And a voluntary undertaking by Girkout to oversee safety procedures, even without contractual duty, would render defendant liable for any negligence by Girkout in the course of his actual supervision. See Blaber v. United States, supra note 5, at 631–632; cf. Indian Towing Co. v. United States, 350 U.S. 61, 64–65, 69 (1955).

7. See Reynolds v. Land Mortgage & Title Co., 114 Conn. 447, 455, 159 A. 282, 285 (1932); see also Corey v. Phillips, 126 Conn. 246, 255, 10 A.2d 370, 374 (1939).

ligence which would absolve defendant from liability for its employee's acts.[8]

Defendant also contends that contributory negligence by plaintiff's decedent bars recovery[9]; the claimed contributory negligence lies in decedent's having "agreed" to Girkout's door remaining open, and in his continuing his own duties under the hazardous conditions created by that open door. Again, however, plaintiff has raised substantial fact questions, for it is urged on plaintiff's behalf that the evidence points rather to a decision by Girkout alone than to any "agreement" before or after the fact with plaintiff's decedent; in this regard, plaintiff also raises once more the claim that the gunners considered themselves under Girkout's direction and that Girkout did in fact give the orders.

With numerous genuine and material issues of fact present in this case, there is a genuine need for the fuller exposition of underlying facts to be derived from a trial. The government's motion for summary judgment must therefore be denied.[10]

## CONCLUSION

Defendant's motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., is denied, there being genuine issues of material fact and defendant not being entitled to judgment as a matter of law.

---

8. Cf. Virelli v. Benhattie, Inc., 146 Conn. 203, 148 A.2d 760 (1959); Corey v. Phillips, supra note 7, at 255–256, 10 A.2d 370 at 374.

9. See, e. g., Ippolito v. Stafford, 141 Conn. 372, 376–377, 106 A.2d 470, 472 (1954). It is to be remarked that the second count of the complaint alleges that degree of negligence which amounts to reckless behavior or "wanton misconduct" under Connecticut law; contributory negli-
gence is no defense to such a cause of action. See, e. g. Decker v. Roberts, 125 Conn. 150, 157, 3 A.2d 855, 858 (1939).

10. See Dressler v. MV Sandpiper, supra note 1. For the purposes of the instant motion, of course, any inferences to be drawn from the papers on file have been viewed in the light most favorable to plaintiff. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).