PAULA D'ARCY, ADMINISTRATRIX (ESTATES OF ROY T. D'ARCY AND SARAH E. D'ARCY) *v.* JAMES F. SHUGRUE, COMMISSIONER OF TRANSPORTATION (2516)

HULL, BORDEN and DALY, Js.

Argued May 14—decision released August 20, 1985

*William F. Gallagher,* with whom, on the brief, were *Terence A. Zemetis* and *Joseph M. Delaney,* for the appellant-appellee (defendant).

*Richard A. Bieder,* with whom was *Alex A. Knopp,* for the appellee-appellant (plaintiff).

BORDEN, J. The plaintiff is the administratrix of the estates of her husband, Roy T. D'Arcy, and her daughter, Sarah E. D'Arcy. They died when their motor vehicle was struck on Interstate Highway 84 by another motor vehicle, operated by Chester Milton, who had lost control of his vehicle, crossed over the grassy median divider and collided with the D'Arcy vehicle.

The case involves the question of whether the failure of the defendant, the commissioner of transportation, to erect a metal beam divider at that point in the highway could rationally be found to be the sole proximate cause of the deaths of the D'Arcys. We hold that, under the circumstances of this case, as a matter of law the defendant's negligence could not have been the sole proximate cause of their deaths.

On August 18, 1975, at approximately 4 p.m., Roy T. D'Arcy was operating his vehicle, in which the plaintiff and his daughter were passengers, in a westerly direction on Interstate 84, a divided, limited access state highway in Farmington. Milton was operating his vehicle at an excessive rate of speed in an easterly direction on the other side of the highway when he lost control of his vehicle. He crossed the grassy median divider at a point at which there was no barrier and collided with the D'Arcy vehicle in the westbound lane. The collision caused the deaths of Roy T. D'Arcy and Sarah E. D'Arcy.

The plaintiff sued the defendant pursuant to General Statutes § 13a-144, which imposes liability on the commissioner for injuries suffered "through the neglect or default of the state or any of its employees by means of any defective highway . . . which it is the duty of the commissioner of transportation to keep in repair . . . ." This liability, however, can only be imposed if the defect in the highway is the sole proximate cause of the plaintiff's injuries and if those injuries are not also proximately caused by the negligence of the plaintiff or a third person. *Roth* v. *MacDonald,* 124 Conn. 461, 463, 200 A.2d 725 (1938).

The trial court reserved decision on the defendant's motion for a directed verdict and submitted the case to the jury, together with a series of special interrogatories. The jury rendered a verdict for the plaintiff. In response to the special interrogatories, they found specifically that the defendant was negligent because the absence of a metal beam divider in the construction plan of the highway rendered it unsafe from the date of its opening in 1969 to the date of the collision. The jury also specifically found that this negligence was the sole proximate cause of the deaths because it was the only proximate cause and because it superseded the conduct of Milton.

The defendant moved, pursuant to Practice Book § 321, for judgment in accordance with his earlier motion for a directed verdict, and to set aside the verdict. The trial court denied both motions and rendered judgment on the verdict. The defendant appeals, raising several claims of error. The plaintiff cross appeals, urging us to abandon the rule which predicates the commissioner's liability on a determination that his negligence is the sole proximate cause of the plaintiff's injuries. We find error on the appeal, and no error on the cross appeal.

## The Defendant's Appeal

Although the defendant raises several claims on appeal, both parties agree, as do we, that the central issue is whether there was sufficient evidence to support the verdict. "We are mindful that the 'ruling of the trial court on a motion to set aside a verdict is entitled to great weight' because of the court's familiarity with the facts and circumstances of the case." *Nielsen* v. *D'Angelo,* 1 Conn. App. 239, 244, 471 A.2d 965, cert. dismissed, 193 Conn. 801, 474 A.2d 1259 (1984). We are also mindful of the fact that the jury answered the special interrogatories favorably to the plaintiff, and that, on reviewing a claim of evidentiary sufficiency, we must view the evidence most favorably to sustaining the verdict. Id., 245. We are also aware, of course, that the issue of causation in a negligence action is a question of fact for the trier, subject to reversal by the court only if the evidence is insufficient as a matter of law to support the verdict. See *Coburn* v. *Lenox Homes, Inc.,* 186 Conn. 370, 384–86, 441 A.2d 620 (1982). We conclude, nonetheless, that the evidence in this case was insufficient, as a matter of law, to support the verdict and that the court erred in denying the defendant's motions for judgment and to set aside the verdict.

I

Since the claimed negligence of the defendant pursuant to General Statutes § 13a-144 consisted of a design defect, namely, the absence of a metal beam divider, it was incumbent on the plaintiff to establish that the highway's " 'plan of construction [was] one which was totally inadmissible, [i.e., that] the highway would have been in such a defective condition as to have been out of repair from the beginning.' " *Donnelly* v. *Ives,* 159 Conn. 163, 167, 268 A.2d 406 (1970). The

plaintiff introduced sufficient evidence for the jury to find, as it did, this requirement satisfied. It was also necessary, however, that the plaintiff establish that the defendant's negligence was the sole proximate cause of the deaths of the decedents. The evidence was insufficient, as a matter of law, to establish this sole proximate cause.

The evidence most favorable to sustaining the verdict was as follows: At the area of the highway in question the grassy median divider was 45 feet wide between the eastbound and westbound lanes. There are large concrete pilings, known as a "stack," located on the median. The stack was originally constructed to support intersecting highways which were stacked above and crossed over the highway. There was a metal guardrail protecting the stack. There were also concrete parapets connected to a bridge overpass where the highway crosses over a local road. A metal guardrail ran from the parapet toward the stack. The end of this guardrail was buried in the grassy median. Thus, there was a gap, approximately 1250 feet long, in the grassy median, between the metal guardrail protecting the stack and the buried end of the metal guardrail protecting the parapet.

The D'Arcy vehicle was traveling westerly in the right, or slow, lane. Milton's vehicle left the eastbound lane, began to spin and yaw as it crossed the grassy median, struck the buried end of the metal rail, entered the westbound lanes and struck the D'Arcy vehicle.

It was critical to the plaintiff's claim of the defendant's negligence that she prove that the absence of a metal beam divider in the 1250 foot gap, through which Milton's vehicle traveled, was a factual, or "but for," cause of the collision. In order to do so, she produced two experts who in essence supplied the opinions necessary to her claim.

The first was Harry Gough, a consulting engineer, who reconstructed the accident as follows: When Milton left the eastbound highway he was traveling approximately 87.7 miles per hour. When the right rear of his vehicle hit the end of the metal barrier, where it entered the ground, he was traveling at 79.9 miles per hour. When he collided with the D'Arcy vehicle, he was traveling at 55 miles per hour. The D'Arcy vehicle was traveling at 55 miles per hour prior to the collision. Roy T. D'Arcy had applied his brakes and slowed to 48 miles per hour at the moment of impact. Milton left 250 feet of skid marks from the point at which his vehicle had left the highway to the point of collision. As it crossed the median, the center of gravity of the Milton vehicle was traveling at a 21.28 degree angle, although the vehicle itself had rotated to a 33 degree angle. The right central area, just forward of the door of the Milton vehicle, collided with the D'Arcy vehicle.

The second expert witness was Robert Brenner, a mechanical, traffic and safety engineer. The critical part of Brenner's testimony was in response to a hypothetical question which assumed the following facts, inter alia: The portion of the highway was essentially as already described. When the Milton vehicle first contacted the grassy median it was at an angle of 11 degrees and was traveling at 87.2 miles per hour, with its brake lights on. It continued until it contacted the corner of the beam rail, at which point its angle was 19.5 degrees and its speed 79.5 miles per hour. A portion of the vehicle hit the guardrail, and it continued to spin and hit the D'Arcy vehicle, which had pulled to the right. The Milton vehicle weighed 4482 pounds. Roy T. D'Arcy and Sarah D'Arcy died as a result of the collision.

In response to this hypothetical question, which also included other relevant assumed facts concerning the absence of and the costs of installing a metal beam

median barrier, Brenner testified as follows: But for the absence of a median barrier, the collision would not have occurred because such a barrier would have redirected the Milton vehicle, and, alternately, but for the end of the guardrail, which caused the Milton vehicle to spin, Milton would have had a chance to regain control of his vehicle and avoid the collision. He also testified that these conditions rendered the highway unreasonably dangerous from the time it opened.

The plaintiff also introduced the police report of the accident, which indicated, inter alia, that the Milton vehicle was traveling faster than the posted speed limit of 55 miles per hour, that after leaving 250 feet of skid marks in crossing the median divider it hit the D'Arcy vehicle and stopped it, hit it again, pushing it sideways 13 feet onto the right shoulder, and that the Milton vehicle continued on and bounced off the right guardrail into the center lane, where it came to rest. The report also indicated that Milton admitted that he had last eaten at approximately 9 a.m. that day, and had drunk a half pint of vodka in the three hours prior to the accident.

The plaintiff conceded at the trial, in both her opening statement to the jury at the beginning of the case; Practice Book § 296; and in her final argument to the jury at the conclusion of the evidence, that Milton was negligent. Although we do not have a transcript of these statements, this concession is noted in the plaintiff's brief and in the trial court's charge to the jury.

There was also evidence, offered by the defendant, that, at the time of the accident, Milton was racing with another vehicle at speeds of 85 to 100 miles per hour, that the content of his blood was .24 per cent by weight of alcohol; cf. General Statutes § 14-227a; and that he was unfit to operate a motor vehicle. Since this evidence, accentuating the plaintiff's concession of

Milton's negligence, would tend to militate against, rather than for, the court's ruling in denying the defendant's motions, we do not consider it. See *Nielsen* v. *D'Angelo,* supra.

## II

Having conceded Milton's negligence, the plaintiff offers two alternate bases on which to sustain the verdicts. The first is that the jury could rationally have found, on the basis of the purpose and effectiveness of a median barrier and the known danger of fatal crossover accidents, that Milton's conduct, even if negligent, was only a minor, and not a substantial, factor in the deaths. The second is that the jury could rationally have found that the defendant's negligence superseded that of Milton.

## A

We first consider the plaintiff's argument which seeks to minimize the effect of Milton's negligence. We reject it for several reasons.

First, at oral argument in this court the plaintiff stressed that there was evidence which, if credited by the jury, supplied a reasonable basis for a finding that Milton's conduct was but a minor, and not a substantial, factor in causing the collision, and that, therefore, under *Mahoney* v. *Beatman,* 110 Conn. 184, 197–98, 147 A.2d 762 (1929), Milton's conduct was not a proximate cause of the collision. The evidence alluded to is essentially the testimony of Milton and of Herbert Nails, Milton's brother-in-law, with whom Milton was purportedly racing at the time of the accident. This evidence was introduced by the defendant. The gist of their testimony, taken most favorably to the plaintiff, was that before the accident they had drunk vodka, that Milton was traveling at 45 to 55 miles per hour when he was cut off by a tractor trailer, and that he turned left to avoid the tractor trailer.

We note, however, that in her brief the plaintiff does not rely on this theory of sole proximate cause. Nowhere does she advert to this evidence; indeed it was brought to our attention only in passing in the defendant's brief. The only reference in her brief which we glean as a possible effort to supply this basis for the jury's finding of sole proximate cause is the general statement that "[t]he jury could have considered the purpose and effectiveness of a median barrier as well as the known danger of fatal crossover accidents in finding that the manner in which Milton crossed over the median, even if negligent, was only a minor factor and not a substantial factor in the D'Arcy deaths." We cannot fairly read this evidence as referring to "the manner in which Milton crossed over the median."[1] The major thrust of the plaintiff's argument focuses, not on whether Milton's negligence could be found to be only a minor factor in causing the deaths, but on whether the defendant's negligence could be found to be a cause superseding Milton's negligence.

Second, and most important, this evidence minimizing Milton's negligence, and its possible use as a justification for the jury's finding of sole proximate cause, is simply and inherently contradictory to the plaintiff's theory of liability and to the evidence in support of the defendant's negligence. That theory and evidence rely, for their foundation, on the testimony of Gough and Brenner. Their testimony, taken together, was that Milton, having left 250 feet of skid marks in the eastbound lane, left that lane at about 87 miles per hour, crossed over the grassy median divider, spinning and yawing, at about 79 miles per hour, and traveling at

---

[1] Furthermore, in *Mahoney* v. *Beatman,* 110 Conn. 184, 198, 147 A. 762 (1929), the court specifically noted that the plaintiff, whose conduct was being gauged as being a substantial factor in causing the collision, had not been found to be negligent. In this case, the plaintiff conceded that Milton, whose conduct corresponds to the plaintiff in *Mahoney* v. *Beatman,* supra, was negligent.

55 miles per hour collided with the D'Arcy vehicle. Moreover, there was also evidence, adduced by the plaintiff, of Milton's drinking one-half pint of vodka on a virtually empty stomach during the three hours prior to the accident. It simply defies common sense to permit the plaintiff to claim that a finding of the defendant's negligence can be based on the plaintiff's experts' reconstruction of the accident and the other evidence introduced by the plaintiff supporting that reconstruction, and, at the same time, to claim that the jury must be deemed rationally to have completely disregarded that reconstruction in assessing the conduct of a central actor's role in the very same reconstruction. "It is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom." *State* v. *Zayas,* 195 Conn. 611, 620, 490 A.2d 68 (1985).

Third, it is clear to us that this proferred basis on which to sustain the verdict, which attempts to reduce the effect of Milton's negligence, is not the theory on which the case was tried by the plaintiff and was not the basis on which the trial court denied the defendant's motions. In response to the defendant's first motion for a directed verdict, made at the conclusion of the plaintiff's case, the plaintiff argued, not that Milton's negligence was only a minor factor, but that the jury could conclude that Milton was not negligent at all. Ultimately, however, the plaintiff conceded Milton's negligence. She introduced evidence of his great speed, his loss of control, both on the highway and as he crossed the divider and collided with the D'Arcy vehicle, and of his drinking prior to the accident. The trial court, in its memorandum of decision denying the defendant's motions, viewed the evidence in favor of the verdict as establishing that "Milton, while intoxicated, was operating a vehicle in an easterly direction on [Interstate Highway 84] at an excessive

rate of speed and lost control of his vehicle," crossed the median divider, and struck the D'Arcy vehicle, causing the deaths.

The gist of the court's reasoning that the jury could reasonably have found the defendant's negligence to be the sole proximate cause rested on two bases. First, there was ample evidence that the state in 1967 adopted a policy mandating median barriers in areas of highways such as this, and that the purpose of such a barrier was to prevent high speed, crossover collisions. Second, the court reasoned as follows: "This concern for crossover accidents was certainly well founded. To be sure, if the Milton vehicle had not crossed over, this tragic event would never have occurred. Nevertheless, crossover accidents by speeders was a known condition which the commissioner had to recognize when designing and constructing the state's super highways. The defendant called a state trooper who testified on cross examination that between 1969 and 1975, it was not unusual for persons to operate vehicles on I-84 while intoxicated and at high rates of speed. There was ample expert testimony for the jury to conclude that if the barrier was in place, in accordance with the state's own policy, the collision would not have occurred. Since the purpose of the barrier was to prevent crossover accidents by known speeders (including intoxicated speeders) and since the barrier would have prevented the Milton crossover or deflected his vehicle so that the accident would not have occurred, the finding that the failure to erect such a barrier to protect travelers, such as the D'Arcys, was the sole proximate cause of their deaths must stand as a legitimate question of fact which it was in the province of the jury to determine. The state cannot shield itself behind the negligence of Milton when that negligence was a known risk from which it should have protected the public by the installation of a mere barrier. The harm that occurred was

the foreseeable risk created by the defendant's failure to erect a barrier at the site where the crossover occurred and it was reasonable for the jury to find that it was the sole proximate cause of the accident.''

The plaintiff echoed this line of reasoning in this court. She urges us to sustain the verdict, with respect to this aspect of the sole proximate cause issue, on the theory that the jury could have considered the purpose and effectiveness of a median barrier, and the known danger of fatal crossover accidents.

We generally decide appeals based on the theories on which the cases were decided in the trial court. Practice Book § 3063; *Montanaro Bros. Builders, Inc.* v. *Snow,* 4 Conn. App. 46, 52, 492 A.2d 223 (1985). This reasoning does not seek to establish Milton's negligence as but a minor factor in the collision. Instead, it has as its factual predicate his speeding while intoxicated. Thus, minimization of Milton's role in causing the collision was not the theory on which the case was tried and decided.

Moreover, this reasoning, in which the trial court and the plaintiff concur, does no more than to establish that the defendant's negligence could certainly be found to be *a* proximate cause of the deaths of the D'Arcys. We fail to see, however, that it supplies a basis on which a jury, faced with the evidence in this case, could have rationally found that negligence to be the *sole* proximate cause of those deaths.

### B

This leaves for analysis the issue of whether, on this evidence, the jury could rationally have found that the defendant's negligence was a superseding cause so as to be the sole proximate cause of the deaths. This is the principal basis which the plaintiff offers on appeal on which to sustain the verdict, and its invocation as

such a basis is the principal claim of error by the defendant on appeal. We conclude that the evidence in this case, taken most favorably to the plaintiff, cannot as a matter of law support a finding that the defendant's negligence in failing to erect a metal barrier was a superseding cause, within the proper meaning of that term, so as to be the sole proximate cause of the deaths of the D'Arcys.

The terms "intervening cause" and "superseding cause" have been used interchangeably. See, e.g., *Corey* v. *Phillips,* 126 Conn. 246, 253–56, 10 A.2d 370 (1939). The Restatement of Torts makes clear that the doctrine is properly referred to as "superseding cause," and that it embodies within it the concept of an "intervening force." 2 Restatement (Second), Torts §§ 440 through 453.

The function of the doctrine of superseding cause is not to serve as an independent basis of liability, regardless of the conduct of a third party whose negligent conduct may have contributed to the plaintiff's loss. The function of the doctrine is to define the circumstances under which responsibility may be shifted entirely from the shoulders of one person, who is determined to be negligent, to the shoulders of another person, who may also be determined to be negligent, or to some other force. "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Id., § 440.

If the third person's negligence is determined to be a superseding cause of the plaintiff's injury, that negligence, rather than the negligence of the party attempting to invoke the doctrine of superseding cause, is said to be the sole proximate cause of the injury. *Virelli* v. *Benhattie, Inc.,* 146 Conn. 203, 209, 148 A.2d 760

(1959); see also *Miranti* v. *Brookside Shopping Center, Inc.*, 159 Conn. 24, 29, 266 A.2d 370 (1969); *Corey* v. *Phillips,* supra, 254–56. The doctrine serves as a dividing line between two closely related factual situations: where two forces combine to cause the plaintiff's injuries; and where one force intervenes in such a way as to relieve a negligent defendant from liability. See generally 2 Restatement (Second), Torts §§ 440 through 453. Thus, the doctrine of superseding cause serves as a device by which one admittedly negligent party can, by identifying another's[2] superseding conduct, exonerate himself from liability by shifting the causation element entirely elsewhere.

The circumstances under which this shifting may take place have been well-defined in our case law. Even if a plaintiff's injuries are in fact caused by a defendant's negligence, a superseding cause may break that causal connection if it "so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in any degree, produces the injury; or it must be the non-concurring culpable act of a human being who is legally responsible for such act." *Corey* v. *Phillips,* supra, 255. " 'If a defendant's negligence was a substantial factor in producing the plaintiff's injuries, the defendant would not be relieved from liability for those injuries even though another force concurred to produce them.' *Miranti* v. *Brookside Shopping Center, Inc.,* supra, 29. And, where the negligence of the actor creates the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope

---

[2] Although in this case the doctrine comes into play between two potential tortfeasers, namely, the defendant and Milton, it can, of course, also relate to a defendant's negligence and the plaintiff's contributory negligence.

of the risk created by the actor's conduct. Restatement (Second), 2 Torts § 442B . . . . " *Merhi* v. *Becker,* 164 Conn. 516, 522, 325 A.2d 270 (1973); *Tetro* v. *Stratford,* 189 Conn. 601, 605, 458 A.2d 5 (1983).

This analysis makes clear that the doctrine of superseding cause cannot, under the facts of this case, serve as a basis for a finding that the defendant's negligence was the sole proximate cause of the collision which caused the deaths of the D'Arcys. This is so because, in order properly to apply that doctrine to the facts of this case, it is necessary to ask this question: Assuming that Milton was negligent, which the plaintiff conceded, and assuming also that his negligence was a "but for" cause of the deaths, which cannot be doubted and which formed a critical factual predicate of the plaintiff's assertion of the defendant's liability, could the jury have rationally found that the *defendant's negligence* was a superseding cause which would have relieved Milton from liability? It is only if the answer to the question is "Yes," that the defendant's negligence could be found, under the doctrine of superseding cause, to be the sole proximate cause of the deaths. Unless that question could rationally have been answered, "Yes," Milton could not have been relieved of liability by the doctrine of superseding cause, the conduct of both Milton and the defendant would have to be viewed as concurring to cause the deaths, and the defendant's negligence could not, therefore, be the sole proximate cause of the deaths.

Applying the doctrine to the facts of the case, we conclude that the jury could not, as a matter of law, have reasonably concluded that the defendant's negligence was a superseding cause so as to relieve Milton's conduct of liability of the deaths. It cannot be doubted on this evidence that Milton's negligence was a substantial factor in producing the deaths. It was a "but for" cause, and no rational jury could have found other than

that the resulting deaths were within the foreseeable risk created by that negligence. *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 384, 441 A.2d 620 (1982).

"[W]here the negligence of the actor [i.e., Milton] creates the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force [i.e., the defendant's negligence] does not relieve the actor [Milton] of liability, *except where the harm is intentionally caused by a third person [the defendant] and is not within the scope of the risk created by the actor's [Milton's] conduct.*" (Emphasis added.) *Merhi* v. *Becker,* supra; 2 Restatement (Second), Torts § 442B. "[A]ny harm which is in itself foreseeable, as to which the actor has created or increased the recognizable risk, is always 'proximate,' no matter how it is brought about, except where there is such intentionally tortious or criminal intervention, and it is not within the scope of the risk created by the original negligent conduct." 2 Restatement (Second), Torts § 442B, comment b.

Here, there is no evidence to support a determination that the defendant's conduct, although negligent, was intentionally tortious or criminal. Nor could the jury have rationally found that the deaths of the D'Arcys were not within the scope of the risk created or increased by Milton's originally negligent conduct.[3] Therefore, since there was no basis for a finding that the defendant's negligence was a superseding cause with respect to Milton's conduct, there was no basis for a finding that the defendant's negligence was the sole proximate cause of the deaths of the D'Arcys.

---

[3] The plaintiff relies on two out of state cases: *Thorbjohnson* v. *Rockland-Rockport Lime Co., Inc.,* 309 A.2d 240 (Me. 1973); and *Raybell* v. *State,* 6 Wash. App. 795, 496 P.2d 559 (1972). Both are factually distinguishable, in that both involve a one car accident, rather than, as here, a crossover accident in which the negligence of the other driver was conceded. Furthermore, to the extent that they do involve an issue of sole proximate cause arising out of a superseding cause, similar to this case, we find their reasoning unpersuasive.

## The Plaintiff's Cross Appeal

The plaintiff has filed a cross appeal in which she urges us to abandon the long standing interpretation of General Statutes § 13a-144 requiring her to establish, as the basis for recovery from the defendant, that his negligence was the sole proximate cause of the deaths. We decline to do so.

The judgment from which the defendant appealed was in favor of the plaintiff. Therefore, she is not an "appellee . . . aggrieved by the judgment . . . from which the appellant has appealed"; Practice Book § 3003; and her proper procedure was not to file a cross appeal within ten days of the appeal. Id. She seeks, instead, "to present for review alternate grounds upon which the judgment may be affirmed or . . . to present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial," in which case her proper procedure was, as appellee, to "file a preliminary statement of issues within fourteen days from the filing of the appeal" presenting the adverse ruling of the trial court which she sought to have reviewed. Practice Book § 3012 (a). Since both parties have fully briefed and argued the issue, however, and since presentation of this claim to us is a prerequisite to the plaintiff's seeking further review of it by way of a petition for certification by the Supreme Court; *State* v. *Torrence,* 196 Conn. 430, 433–34, 434 nn.5, 6, 493 A.2d 865 (1985); we consider her claim as if properly presented.

The plaintiff's claim is essentially that *Perrotti* v. *Bennett,* 94 Conn. 533, 109 A.2d 890 (1920), and its progeny; see, e.g., *Donnelly* v. *Ives,* 159 Conn. 163, 268 A.2d 406 (1970); *Hay* v. *Hill,* 137 Conn. 285, 76 A.2d 924 (1950); *Roth* v. *MacDonald,* 124 Conn. 461, 200 A.

725 (1938); were wrongly decided. In our short appellate life we have consistently taken the position that it is not within our function as an intermediate appellate court to overrule Supreme Court authority. *O'Connor* v. *O'Connor,* 4 Conn. App. 19, 20, 492 A.2d 201 (1985); *Plawecki* v. *Angelo Tomasso, Inc.,* 1 Conn. App. 48, 52 n.5, 467 A.2d 944, cert. denied, 192 Conn. 801, 470 A.2d 1218 (1984). This principle has even more applicability where, as here, the authority sought to be overruled involves the interpretation of a statute. *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 62–63, 111 A.2d 4 (1955). There is no basis in this record to justify the radical departure from the appellate norm which the plaintiff seeks.

There is error on the appeal, the judgment is set aside and the case is remanded with direction to render judgment for the defendant; there is no error on the cross appeal.

In this opinion the other judges concurred.