JOSEPH TETRO *v.* TOWN OF STRATFORD ET AL.
(10791)

PETERS, PARSKEY, SHEA, GRILLO and DALY, Js.

Argued February 3—decision released April 5, 1983

*Richard P. Gilardi,* town counsel, with whom, on the brief, was *Thomas C. Thornberry,* assistant town attorney, for the appellants (defendants).

*T. Paul Tremont,* with whom, on the brief, was *Robert R. Sheldon,* for the appellee (plaintiff).

PETERS, J. This case involves the liability of police officers, and the town by which they are employed, for injuries arising out of a police pursuit of a suspected law violator. The plaintiff, Joseph Tetro, brought an action alleging negligence on the part of the individual defendants, Anthony Rich and William Thornton, and vicarious liability on the part of their employer, the town of Stratford.[1] After a trial, a jury returned a verdict for the plaintiff in the amount of $59,000. The defendants are appealing from the adverse judgment which followed from the trial court's denial of their motion to set aside the jury's verdict and to enter a directed verdict in their behalf.

The jury might reasonably have found the following facts. The defendants Rich and Thornton, members of the Stratford police department, were in their patrol car on March 4, 1975, at about 12 noon, when they observed a green Chevrolet parked in a shopping center parking lot off Stratford Avenue. They thought the Chevrolet might have been stolen because the boys in the car looked too

---

[1] The liability of the defendant town is predicated on General Statutes § 7-465, under which municipalities, without regard to governmental immunity, are required to "pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law . . . for physical damages to person or property . . . if the employee, at the time of the . . . accident . . . was acting in the performance of his duties and within the scope of his employment, and if such . . . accident . . . was not the result of any wilful or wanton act of such employee in the discharge of such duty." In accordance with this statute, the town stipulated, at the outset of the litigation, that it would pay any final judgment rendered against Rich and Thornton.

young to have valid drivers' licenses.[2] When the police approached the Chevrolet to make inquiries, the boys drove off. The police car pursued the Chevrolet, with the police car's siren working and revolving dome light flashing. Both the fleeing and the pursuing car reached speeds of approximately fifty miles per hour.

When the Chevrolet left the parking lot, it headed west on Stratford Avenue, toward Bridgeport, in a densely populated urban area. At the Stratford/Bridgeport town line, Stratford Avenue bifurcates, with Stratford Avenue becoming one way easterly, and Connecticut Avenue becoming one way westerly. The Chevrolet, with the police car in close pursuit, proceeded westerly, the wrong way, on Stratford Avenue, until the Chevrolet collided with two cars including that of the plaintiff Tetro. The plaintiff, who had been driving his car in a lawful manner, heard the police car's siren but was unable to determine its source before his car was struck head-on.

With regard to the defendants' failure to exercise due care, the jury could reasonably have found that the town of Stratford had adopted, prior to this accident, a policy concerning the conduct of high speed chases by police officers. That policy urged police officers to avoid high speed chases as much as possible, and to consider, before under-

---

[2] In a police report filed immediately after the incident, it was noted that "Officer Rich reports that he and Officer Thornton were on routine patrol and they were checking the Stratford Town Fair parking lot when they observed a Green Chevy with three Puerto Rican males in same. These youths appeared to be of Puerto Rican Descent. Officers report they signaled this vehicle to stop by turning on their Red Light and also their Siren . . . ." At the trial, however, defendant Rich testified that he became suspicious when he first saw the car in the parking lot because the three young males in the front seat "looked too young to be driving a car."

taking such pursuit, the nature of the underlying offense and the dangers that might attend pursuit. When a high speed pursuit was made, all safety precautions were to be used. According to the opinion of an expert witness, a member of the Stratford police department, the high speed chase that was conducted in this case by Rich and Thornton was in violation of the Stratford policy.

The defendants' appeal does not directly challenge the propriety of the jury's conclusion that their conduct was negligent. The defendants claim instead that the evidence was insufficient, for three reasons, to establish the necessary causal link between their acts or omissions and the injuries sustained by the plaintiff. They argue that proximate cause was lacking because of: (1) the intervening negligence of the driver of the pursued car; (2) the lack of connection between the plaintiff's injuries and the defendants' operation of the police car; and (3) the immunity conferred, as a matter of public policy, upon emergency vehicles in pursuit of law violators. Therefore, the defendants maintain, the court was required to resolve the issue of proximate cause in their favor as a matter of law. We do not agree.

The defendants' first claim of error is that, according to the Connecticut law on causation and the rulings of other jurisdictions in police pursuit cases, the sole proximate cause of the plaintiff's injury was the negligent driving of the pursued car, the Chevrolet, for which the defendants cannot legally be held responsible. Recognizing that, in application, this case is one of first impression for this court, we are nonetheless unpersuaded by the authorities upon which the defendants rely.

The Connecticut law of causation was recently restated in *Coburn* v. *Lenox Homes, Inc.,* 186 Conn. 370, 382–84, 441 A.2d 620 (1982), where we held (at pp. 383–84) that "[m]ore than one proximate cause may result in any harm suffered. . . . An actual cause that is a substantial factor in the resulting harm is a proximate cause of that harm. . . . Proximate cause is ordinarily a question of fact. . . . The test for finding proximate cause 'is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence.' . . . The foreseeable risk may include the acts of the plaintiff and of third parties." In earlier cases, we have specifically addressed the effect of a third party's intervening negligence. We have consistently adhered to the standard of 2 Restatement (Second), Torts § 442B (1965) that a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, except where the harm is intentionally caused by the third person and is not within the scope of the risk created by the defendant's conduct. *Kiniry* v. *Danbury Hospital,* 183 Conn. 448, 445, 439 A.2d 408 (1981); *Merhi* v. *Becker,* 164 Conn. 516, 522, 325 A.2d 270 (1973); *Miranti* v. *Brookside Shopping Center, Inc.,* 159 Conn. 24, 28, 266 A.2d 370 (1969). These authorities[3] make it clear that the recklessness of

---

[3] The Connecticut cases upon which the defendants rely; *Nehring* v. *Connecticut Co.,* 86 Conn. 109, 84 A. 524 (1912) and *Miner* v. *McNamara,* 81 Conn. 690, 72 A. 138 (1909); to the extent that they contain statements to the contrary, are no longer good law. Neither case deals with the problem before us. *Nehring* concerns the doctrines of contributory negligence and last clear chance, doctrines today in substantial measure replaced by the doctrine of comparative negligence. See General Statutes § 52-572h. *Miner*

the operator of the pursued car, the Chevrolet, does not relieve the defendants of liability because the trier of fact may find that the plaintiff's injury falls within the scope of the risk created by their negligent conduct in maintaining a police pursuit at high speeds in the wrong direction on a busy one-way street.

Recent cases in other jurisdictions have similarly refused to limit police liability for negligent conduct of a high speed chase, as a matter of law, to collisions involving the police vehicle itself. See *Myers v. Town of Harrison,* 438 F.2d 293, 297 (2d Cir. 1971); *Schatz v. Cutler,* 395 F. Sup. 271, 275 (D. Vt. 1975); *City of Sacramento v. Superior Court of the State of California,* 131 Cal. App. 3d 395, 405–406, 182 Cal. Rptr. 443 (1982) (expressly limiting the earlier California cases upon which the defendants rely); *Reed v. Winter Park,* 253 So. 2d 475, 477 (Fla. App. 1971); *Selkowitz v. County of Nassau,* 45 N.Y.2d 97, 101–102, 408 N.Y.S.2d 10, 379 N.E.2d 1140 (1978); *Mason v. Bitton,* 85 Wash. 2d 321, 326, 534 P.2d 1360 (1975). The cases to the contrary, now in the minority, are by and large both older and, in our view, less well-reasoned. See *United States v. Hutchins,* 268 F.2d 69, 72 (6th Cir. 1959); *West Virginia v. Fidelity & Casualty Co. of New York,* 263 F. Sup. 88, 90–91 (S.D. W. Va. 1967); *Chambers v. Ideal Pure Milk Co.,* 245 S.W.2d 589, 590–91 (Ky. 1952); *Roll v. Timberman,*

was a case in which a builder's negligence in construction was held to have been superseded by the negligence of the building's owner who, with full knowledge of its defects, leased it to tenants who suffered losses because of the building's collapse. When *Miner* was decided, it was doubtful that a builder's negligence would continue to be actionable once his work was completed and accepted by the building's owner; that doubt was resolved in favor of liability in *Scribner v. O'Brien, Inc.,* 169 Conn. 389, 400, 363 A.2d 160 (1975).

94 N.J. Super. 530, 535–37, 229 A.2d 281 (1967). The intervention of negligent or even reckless behavior by the driver of the car whom the police pursue does not, under the emergent majority view, require the conclusion that there is a lack of proximate cause between police negligence and an innocent victim's injuries.

The trial court was therefore not in error in permitting the jury to determine the question of proximate cause as a matter of fact, despite the intervening negligence or recklessness of the driver of the Chevrolet. For related reasons, the defendants' second claim of error is also unpersuasive. That argument asserts that no proximate relationship can be found to have existed between the plaintiff's injuries and the defendants' operation of their pursuit vehicle unless the operation of the vehicle itself constituted the danger to the injured party.

As a common law proposition, the principles that govern proximate causation, as we have noted, do not limit the foreseeable risk attendant to a defendant's negligent conduct to his own acts, but may encompass the acts "of the plaintiff and of third parties." *Coburn* v. *Lenox Homes, Inc.,* supra, 384. The zone of risk for negligent conduct is not automatically confined to physical contact between the injured party and the defendants' own vehicle. There is no viable distinction between the defendants' assertion, in their first claim of error, that they bear no responsibility for the negligence of the fleeing driver, and their assertion here that they bear no responsibility for injuries not caused by their police car.

The defendants argue, however, that these common law principles are, for emergency vehicles like police cars, superseded by the provisions of Gen-

eral Statutes § 14-283.[4] That statute defines the term "emergency vehicle" to include a "local police vehicle . . . in the pursuit of fleeing law violators," and the plaintiff has not challenged its general applicability to this case. The statute, in subsection (b), permits the operator of an emergency vehicle, in disregard of traffic laws, inter alia, to "proceed past any red light or stop signal or stop sign . . . exceed the posted speed limits . . . and . . . disregard . . . regulations governing direction of movement or turning in specific directions." The subsection limits even this authority, however, by providing that the operator, in passing through traffic lights, must slow down "to the extent necessary for the safe operation of such [emergency]

---

[4] General Statutes (Rev. to 1977) § 14-283 provides in relevant part: "RIGHTS OF EMERGENCY VEHICLES. OBSTRUCTION OF. (a) 'Emergency vehicle,' as used in this section, means any ambulance responding to an emergency call, any vehicle used by a fire department or by any officer of a fire department while on the way to a fire or while responding to an emergency call but not while returning from a fire or emergency call, or any state or local police vehicle operated by a police officer answering an emergency call or in the pursuit of fleeing law violators.

"(b) The operator of any emergency vehicle may (1) park or stand such vehicle, irrespective of the provisions of chapter 248, (2) proceed past any red light or stop signal or stop sign, but only after slowing down or stopping to the extent necessary for the safe operation of such vehicle, (3) exceed the posted speed limits or other speed limits imposed by or pursuant to section 14-219 so long as he does not endanger life or property by so doing, and (4) disregard statutes, ordinances or regulations governing direction of movement or turning in specific directions.

"(c) The exemptions herein granted shall apply only when an emergency vehicle is making use of an audible warning signal device including but not limited to a siren, whistle or bell which meets the requirements of subsection (d) of section 14-80 and visible flashing or revolving lights which meet the requirements of sections 14-96p and 14-96g and to any state or local police vehicle properly and lawfully making use of an audible warning signal device only.

"(d) The provisions of this section shall not relieve the operator of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property."

vehicle" and in exceeding normal speed limits, must "not endanger life or property by so doing." Furthermore, the statute expressly states, in subsection (d), that it "shall not relieve the operator of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property." Read as a whole, the defendants contend, this statute limits their scope of duty to incidents involving collisions with the emergency vehicle itself.

We see no reason to read the words "safety of all persons and property" so restrictively. Other courts, construing similar statutory language, have explained that emergency vehicle legislation provides only limited shelter from liability for negligence. The effect of the statute is merely to displace the conclusive presumption of negligence that ordinarily arises from the violation of traffic rules. The statute does not relieve operators of emergency vehicles from their general duty to exercise due care for the safety of others. *Brummett* v. *County of Sacramento,* 21 Cal. 3d 880, 886–87, 582 P.2d 952 (1978); *City of Sacramento* v. *Superior Court of the State of California,* supra; *Mason* v. *Bitton,* supra.[5] We agree with this interpretation and con-

---

[5] The contrary cases upon which the defendants rely are all distinguishable. The authority of the two California cases, *Draper* v. *City of Los Angeles,* 91 Cal. App. 2d 315, 205 P.2d 46 (1949) and *Pagels* v. *City and County of San Francisco,* 135 Cal. App. 2d 152, 286 P.2d 877 (1955), has been undermined by *City of Sacramento* v. *Superior Court of the State of California,* 131 Cal. App. 3d 395, 404, 182 Cal. Rptr. 443 (1982). *City of Miami* v. *Horne,* 198 So. 2d 10 (Fla. 1967) must be read with *Reed* v. *Winter Park,* 253 So. 2d 475, 477 (Fla. App. 1971), making the extent of proximate cause a question for the trier of fact. New York, like Florida, treats proximate cause as a question of fact. *Stanton* v. *State,* 26 N.Y.2d 990, 311 N.Y.S.2d 28, 259 N.E.2d 494 (1970), a case affirming factfinding in favor of the police, must therefore be read in conjunction with *Selkowitz* v. *County of Nassau,* 45 N.Y.2d 97, 408 N.Y.S.2d 10, 379 N.E.2d 1140 (1978), affirming factfinding in favor of the injured party.

clude that § 14-283 provides no special zone of limited liability once the defendants' negligence has been established.

The defendants' final claim of error asserts that public policy requires a limitation of the liability of pursuing police vehicles to accidents involving the police car itself. The defendants maintain that police officers should not have to abandon or terminate the pursuit of law violators just because the fleeing person may create a risk to the public.

This argument is predicated on an assumption that we are not prepared to make. The argument addresses principally one aspect of the defendants' alleged failure to exercise due care, namely the failure to abandon or terminate pursuit, and assumes a jury verdict on this basis. As the defendants themselves recognize in their brief, the plaintiff's complaint is not so limited. The jury having returned a general verdict against the defendants, we must presume that the jury found every issue in favor of the plaintiff, including the claim of the defendants' negligence in their manner of pursuit. *LaFleur* v. *Farmington River Power Co.*, 187 Conn. 339, 342, 445 A.2d 924 (1982); see *Giglio* v. *Connecticut Light & Power Co.*, 180 Conn. 230, 232, 429 A.2d 486 (1980). Since the defendants do not contest the sufficiency of the evidence to support a finding on this claim of negligence, the jury's verdict must stand,[6] whether or

---

[6] We note that the defendants have raised no claims of error wih regard to the instructions to the jury. We therefore have no occasion to consider the extent to which formulation of a duty of care should take into account, as one of the relevant circumstances, the fact that police officers are responding to an emergency. See, e.g., *Brummett* v. *County of Sacramento*, 21 Cal. 3d 880, 886, 148 Cal. Rptr. 361, 582 P.2d 952 (1978).

not there was error with regard to the alleged failure to abandon pursuit of the Chevrolet.

As a general proposition, our common law and our statutes do not confer upon police officers, whose conduct is negligent, blanket immunity from liability to an innocent bystander by virtue of their engagement in the pursuit of persons whom they believe to have engaged in criminal behavior. We note again the salient circumstances of this case: the occupants of the Chevrolet were not endangering anyone when they were first confronted by the defendants; the defendants, in violation of announced town policy, pursued the Chevrolet at high speeds through busy city thoroughfares, into a one-way street the wrong way. In these circumstances, the trial court correctly refused to direct a verdict for the defendants and left to the jury the determination of both negligence and of proximate cause as questions of fact.

There is no error.

In this opinion the other judges concurred.