[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This case is a wrongful death action. The plaintiff's decedent, Robin Kalina Pratt, died on March 27, 1988 as a result of gunshot wounds to the head and chest apparently inflicted by her estranged husband Douglas Pratt with a 30/30 Marlin rifle and ammunition he had purchased on the same day from a KMart store in Waterbury, Connecticut. After shooting Robin Kalina Pratt, Douglas Pratt used the same firearm and fatally shot himself in the head.
The plaintiff's Second Amended Complaint, dated July 21, 1991 and filed July 31, 1991, seeks recovery against the defendant KMart Corporation [hereafter "KMart"] based on common law negligence in the first count and violation of certain provisions of the Federal Gun Control Act, 18 U.S.C. § 922 (d)(1), (4), (6), in the second count. Both counts allege that prior to March 27, 1988, Douglas Pratt had been convicted of a felony, dishonorably discharged from the Armed Forces, hospitalized in a mental institution, see fn. 3 and 7 infra., and that on March 27, 1988 he was not mentally fit to purchase and possess a firearm and ammunition, thus making it unreasonable and unlawful for KMart to sell him a firearm and ammunition. KMart has denied the material allegations of each count or left the plaintiff to his proof.[1] KMart has moved for summary judgment on both counts of the complaint by motion dated August 14, 1992 and filed September 9, 1992.[2]
With respect to the first count, KMart asserts that the CT Page 6993 governing standard of care is either prescribed by 18 U.S.C. § 922(d) or is substantially similar and as a matter of law it did not violate the standard. Further KMart argues even if it breached its duty of care, the court should find, as a matter of law, that the criminal act of Douglas Pratt was a superseding intervening cause not reasonably foreseeable. With respect to the second count, KMart claims the plaintiff is seeking to maintain a private cause of action pursuant to 18 U.S.C. § 92(d) and that he cannot do so.
Summary judgment is appropriate only if the pleadings and other proof submitted in connection with the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Conn. Practice Book 384; e.g., Nolan v. Borkowski, 206 Conn. 495, 500,538 A.2d 1031 (1988). The burden is on the moving party to show "the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. [Citation omitted.]" Dougherty v. Graham,161 Conn. 248, 250, 287 A.2d 382 (1971).
 Hence, the "genuine issue" aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred. [Citations omitted]. A "material fact" has been defined adequately and simply as a fact which will make a difference in the result of the case. [Citation omitted]. "Issues of fact" encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them. [Citations omitted]. . . . summary judgment is to be denied where there exist "genuine issues of fact and inferences of mixed law and fact to be drawn from the evidence before the Court." [Citations omitted]. CT Page 6994
United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 378-79, 260 A.2d 596 (1969).
The court must consider the evidence in the light most favorable to the nonmovant, Catz v. Rubenstein, 201 Conn. 39, 49,513 A.2d 98 (1986), who must be "given the benefit of all favorable inferences that can be drawn." United Oil Co. v. Urban Development Commission, 158 Conn. at 380. When ruling on a motion for summary judgment, "the court's function is not to decide the issues of material fact, but rather to determine whether any such issues exist. [Citation omitted]." Nolan v. Borkowski,206 Conn. at 500.
"Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner. [Citations omitted.]." Spencer v. Good Earth Restaurant Corp., 164 Conn. 194, 199, 319 A.2d 403 (1972); Michaud v. Gurney, 168 Conn. 431, 433-34, 362 A.2d 857 (1975); Amendola v. Geremia, 21 Conn. App. 33, 37, 571 A.2d 131 (1990). However, while breach of duty and proximate cause generally involve mixed questions of fact and law best left to trial, Fidelity 
Casualty Co. v. Constitution National Bank, 167 Conn. 478, 482,356 A.2d 117 (1975); Spencer v. Good Earth Restaurant Corp.,164 Conn. at 198, the existence of a duty is a question of law that the court can decide upon motion for summary judgment. Shore v. Stonington,187 Conn. 147, 151, 444 A.2d 1379 (1982).
 The existence of a duty of care is an essential element of negligence. E.g., Frankovitch v. Burton, 185 Conn. 14, 20, 440 A.2d 254 (1981). A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act. [Citations omitted].
Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375, 441 A.2d 620
(1982).
With respect to the first count which alleges common law negligence, KMart does not deny that it has a duty but rather contends that 18 U.S.C. § 922(d) defines the scope of its duty. CT Page 6995 Section 922(d)[3] makes it unlawful for a licensed firearms dealer to sell a firearm or ammunition "to any person knowing or having reasonable cause to believe" that the person is statutorily disabled. (Emphasis supplied.) KMart describes its duty as follows:
 The dealer is therefore under a duty to not sell firearms to people whom he knows or has reasonable cause to believe: have been convicted of a felony, have been dishonorably discharged from the Armed Forces, have been adjudicated as mentally defective or have been committed to any mental institution.
See Memorandum of Law in Support of Motion for Summary Judgment, p. 4 (Underlining in original, emphasis supplied.) KMart also argues that any duty imposed upon firearm dealers pursuant to a theory of negligent entrustment, see Restatement (Second), Torts 308, 390,[4] is substantially similar in requiring "that the transferor must know or should know that the transferee is not permitted to possess the object." KMart's Memorandum p. 11 (Emphasis supplied.)
The plaintiff responds that 922(d) merely sets minimum requirements for firearms dealers and that it is neither definitive nor exclusive. See Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [hereafter "Plaintiff's Memorandum"], p. 19. The plaintiff concedes that no Connecticut case has imposed liability for the negligent sale of a firearm and that, therefore, the existence of any special duty under the circumstances is an open question in this state. Id., p. 17. It is not necessary to reach this issue however. First, KMart concedes that it has a duty which is either defined by the standard set forth in the federal statute or under common law principles of negligent entrustment. Second, viewing the evidence provided in the light most favorable to the plaintiff, the court is not satisfied as to the absence of genuine issues of material fact in this case concerning the breach of either standard of care that KMart sets forth.
KMart concedes that "the seller's knowledge is the crucial determinant" of breach of care under either standard. KMart's Memorandum p. 4. The "substantially similar" standards of care that KMart sets forth require either actual knowledge ("whom he knows" or "transferor must know") or the ascertainment of some CT Page 6996 knowledge ("reasonable cause to believe" or "should know"). A party's actual knowledge is a question of fact for the trier. See Weintraub v. Richard Dahn, Inc., 188 Conn. 570, 573, 452 A.2d 117
(1982). Likewise, what KMart had reasonable cause to believe or should have known[5] presents a factual question best left to the ultimate trier. Knowledge, like intent, most often must be inferred from the surrounding circumstances. The deposition testimony and other evidence provided in support and opposition to the motion for summary judgment suggests to the court the possibility that contrary inferences may drawn by the fact finders concerning the surrounding circumstances and what KMart knew or should have known in this case about Douglas Pratt. The court should not and will not draw these inferences upon a motion for summary judgment.
KMart asserts that it is entitled to summary judgment because it has provided deposition testimony of its sales clerk that she had Douglas Pratt complete the requisite form and show her his driver's license and that nothing more was required of her or of KMart. KMart's position is that its only obligation was to require the purchaser to provide appropriate identification and to complete a Firearms Transaction Record Form, ATF Form 4473, pursuant to federal regulation. See 27 C.F.R. § 178.124. Courts differ about whether compliance with the Treasury regulations, as a matter of law, satisfies the standard of care. Compare Peek v. Oshman's Sporting Goods Inc., 768 S.W.2d 841, 845 (Tex.App. — San Antonio 1989) (Rejecting the argument "since regardless of a purchaser's answers on the form, a seller might know or have reasonable cause to believe that the purchaser" was statutorily disabled.) with Hetherton v. Sears. Roebuck Co., 445 F. Sup. 294,300 (D.Del. 1978) rev'd on other grounds, 593 F.2d 526 (3rd Cir. 1979) ("[C]ompliance with the specific procedures contained in the Treasury Department regulations is sufficient to constitute dealer compliance with 18 U.S.C. § 922(b)(2).").
Even if KMart were correct that evidence of compliance with Treasury regulations, without more, demonstrates that it met the required standard of care,[6] KMart takes a far too narrow view of the applicable regulations by citing only to 27 C.F.R. § 178.124, one of the record keeping provisions. The regulations that govern the conduct of the business of a licensed firearm dealer impose the same standard as 18 U.S.C. § 922(d) and prohibit the dealer from selling any firearm or ammunition to any person "knowing or having reasonable cause to believe" that the person is statutorily disabled, 27 C.F.R. § 178.32(d), 178.99(c),[7] thus raising the CT Page 6997 same material issues of fact concerning knowledge and the ascertainment of knowledge discussed above, see pp. 8-9 supra. Likewise, under a theory of negligent entrustment, pursuant to either 308 or 390 of the Restatement (Second), Torts, factual questions exist about what KMart knew or should have known that should be resolved by a jury. See Splawnik v. DiCaprio,146 App.Div.2d 333,540 N.Y.S.2d 615, 617 (N.Y.App.Div. 1989); First Trust Co. v. Scheels Hardware, 429 N.W.2d 5, 8 (N.D. 1988); Bernethy v. Walt Failor's Inc., 97 Wash.2d 929, 653 P.2d 280, 283 (1982); Pair v. Blakly, 160 N.J. Super. 14, 388 A.2d 1026, 1027 (N.J. App. Div. 197 8).
Further, the Treasury regulations, 27 C.F.R. § 178.124 (b)(2), require that before transfer the dealer must be "satisfied that the transferee is lawfully entitled to receive the firearm" (emphasis supplied), a somewhat ambiguous and subjective standard to say the least. When the "`law itself furnishes no certain, specific, sufficient standard of conduct . . . of necessity . . . the trier [of fact must] determine, both what the conduct is, and whether it comes up to the standard, as such standard exists in the mind of the trier.' Farrell v. Waterbury Horse R.R. Co., 60 Conn. 239,250, 21 A. 675 (1891). . . ." Amendola v. Geremia,21 Conn. App. at 38.
The plaintiff suggests that in order to know that a purchaser is statutorily disabled KMart had an obligation, among other things, to properly train and instruct its employees concerning relevant facts surrounding gun transactions, to supervise its firearms sales staff and provide guidelines for them, and to ensure that a person of sufficient maturity and experience, trained to question and observe prospective purchasers, held the position of sales clerk. See e.g., Decker v. Gibson Products Co., 679 F.2d 212,216 (11th Cir. 1982); West v. Mache of Cochran. Inc., 187 Ga. App. 365,370 S.E.2d 169, 172 (Ga.App. 1988); Howard Bros. v. Penley,492 So.2d 965, 969 (Miss. 1986); Phillips v. Roy, 431 So.2d 849,852 (La.App. 1983). In other words, the plaintiff argues that the reasonably prudent firearms dealer acting under the same circumstances, that is to prevent the transfer of a firearm to a statutorily disabled person in violation of 922(d) and the regulations, would have exercised that degree of care. See Fidelity Casualty Co. v. Constitution National Bank,167 Conn. at 983-84.
Bearing in mind that "the trier of fact is, in this state, given a wide latitude in drawing the inference of negligence," CT Page 6998 Borsoi v. Sparico, 141 Conn. 366, 369, 106 A.2d 170 (1954), the plaintiff has sufficiently raised a dispute about the material issue of breach of care by providing evidence both that KMart uses a videotape to train employees with respect to the sale of firearms to "individuals who should not own a gun because of the danger to themselves and others," Exhibit I to Plaintiff's Memorandum, and that the sales clerk involved in this case did not view any video or anything else about guns. Exhibit H to Plaintiff's Memorandum, p. 54.
Furthermore, at the hearing on this motion, the full deposition of KMart's sales clerk was entered into evidence. The court has read this deposition and believes that it leaves many unanswered questions. The import of this testimony with respect to what KMart knew or should have known, in light of any other evidence that is introduced concerning the surrounding circumstances, should be left to the trier of fact and should not be resolved on this motion for summary judgment. Berry v. Loiseau,223 Conn. 786, 821, 614 A.2d 414 (1992); Sharp v. Wyatt, 31 Conn. App. 824,837, ___ A.2d ___ (1993). The court notes by way of example, however, that the sales clerk's subjective belief that the purchaser showed no signs of disability is not dispositive since the standard for common law negligence is one of reasonableness. Amendola v. Geremia, 21 Conn. App. at 38.
KMart also moves for summary judgment on the second count of the complaint. It asserts that the second count is an improper effort to state a private cause of action grounded on violations of18 U.S.C. § 922 (d), a federal criminal statute. While KMart correctly views the implication principles of federal law as set forth in the seminal case of Cort v. Ash, 422 U.S. 66,95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), as restrictive, thus leading to a reluctance on the part of courts to imply private causes of action, the federal principles do not preclude a state common law negligence action premised on a breach of statute. Prosser 
Keeton on Torts, 36, p. 221 (5th ed. 1984); see Small v. South Norwalk Savings Bank, 205 Conn. 751, 760, 535 A.2d 1292 (1988); cf. Kelley Property Development. Inc. v. Lebanon, 226 Conn. 314, 333. ___ A.2d ___ (1993) (Violation of statutory rights may allow injured person to assert a private cause of action or a traditional tort action for damages.).
It is not necessary, in this case, to decide whether a private cause of action can be implied under 18 U.S.C. § 922(d) because the second count can be read as pleading statutory negligence. CT Page 6999 Indeed, KMart's argument that 922(d) defines the standard of care for common law negligence with respect to the first count undercuts its argument with respect to the second count. Ordinarily, if a statute sets the standard of care and the statute is violated, then its violation would be statutory negligence or negligence per se. See Staudinger v. Barrett, 208 Conn. 94, 101, 544 A.2d 164 (1988); Wendland v. Ridgefield Construction Services, Inc., 184 Conn. 173,178, 439 A.2d 954 (1981). The allegations of the second court can be read as an alternative theory of negligence and such alternative pleading is clearly allowed under our law. Dreier v. Upjohn Co.,196 Conn. 242, 245, 492 A.2d 164 (1985); Shas v. Wyatt,31 Conn. App. at 844.
Statutory negligence is actionable, however, only if two conditions are met: "(1) the plaintiff must be a member of the class protected by the statute; and (2) the injury must be of the type the statute was intended to prevent." Small v. South Norwalk Savings Bank, 205 Conn. at 760; Wright v. Brown, 167 Conn. 464,468-69, 356 A.2d 176 (1975). A review of the legislative history of the federal firearms statutes indicates that Congress intended the law to broadly protect all members of the general public from not only firearms' violence and lawlessness but also from the irresponsible use of firearms deemed likely to occur when certain individuals possess them. Huddleston v. United States, 415 U.S. 814,824-25, 94 S.Ct. 1263, 1269, 39 L.Ed.2d 782 (1974); see Rubin v. Johnson, 550 N.E.2d 324, 332 (Ind.App. 1990); K-Mart Enterprises of Florida, Inc. v. Keller, 439 So.2d 283, 286-87
(Fla.App. 1983).
When Congress enacted federal gun control legislation in 1968,
 it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest. . . . Congress determined that the ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States. S.Rep. No. 1097, 90th Cong., 2d Sess., 108 (1968) U.S. Code Cong. Admin. News 1968, p. 2112. The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping "firearms out of the hands of those not legally entitled to CT Page 7000 possess them because of age, criminal background or incompetency." S. Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968), U.S. Code Cong. Admin. News 1968, p. 4410.
Huddleston v. United States, 415 U.S. at 824-25 (emphasis supplied). Thus, the principal purpose of the federal firearms legislation was to protect the public. Congress determined that possession of firearms by certain categories of individuals deemed likely to misuse them "would be contrary to the public interest." Id. at 825. The federal Gun Control Act of 1968 was intended to keep "`these lethal weapons out of the hands of criminals, drug addicts, mentally disordered persons, juveniles and other persons whose possession of them is too high a price in danger to us all to allow.' 114 Cong. Rec. 13219 (1968) (remarks of Sen. Tydings)." Id. (emphasis supplied). The burden to keep firearms away from those individuals prohibited from possession by the act was placed on licensed federal firearms dealers who were required "to insure that . . . weapons could not be obtained by individuals whose possession of them would be contrary to the public interest." Id. The statute and regulations set forth the specific categories of individuals deemed likely to pose risk, including persons who have been convicted of felonies, committed to any mental institution or dishonorably discharged from the Armed Forces.18 U.S.C. § 922(d)(1)(4)(6); 27 C.F.R. § 173.32(d)(1)(4)(6); 27 C.F.R. § 178.99(c)(1)(4)(6).
The plaintiff's decedent, alleged to have died as a result of gunshot wounds inflicted by Douglas Pratt who had obtained a firearm and ammunition notwithstanding his alleged statutory disabilities, clearly was a member of the class that 18 U.S.C. § 922(d) is intended to protect who suffered injury from Pratt's misuse of the firearm of a type that 922(d) intended to prevent. Thus, the second count is actionable under a theory of statutory negligence.
Finally, KMart seeks summary judgment based on the doctrine of superseding cause. It argues that, even if it were negligent in selling the firearm and ammunition, Douglas Pratt's intentional and criminal act of shooting the plaintiff's decedent was an intervening act that was the sole proximate cause of her death. While KMart originally addressed this argument to the first count of the complaint, it applies to both counts as proximate cause is an essential element to prove either common law negligence or statutory negligence. Doe v. Manheimer, 212 Conn. 748, 755, CT Page 7001563 A.2d 699 (1989).
In a long line of cases starting with Miranti v. Brookside Shopping Center, Inc., 159 Conn. 24, 28, 266 A.2d 370 (1969), our Supreme Court has adopted the standards set forth in the Restatement (Second), Torts regarding the doctrine of superseding cause. The basic premise of the applicable sections, Restatement (Second), Torts 442B, 448, 449, is that foreseeable intervening conduct of a third party is within the scope of the original risk and does not absolve the defendant of responsibility.
 The "scope of risk" analysis of "proximate cause" . . . applies where . . . the risk of harm created by the defendant's negligence allegedly extends to an intervening criminal act by a third party. See Tetro v. Stratford, [189 Conn. 601], 605 [485 A.2d 5 (1983)]; Coburn v. Lenox Homes Inc., [186 Conn. at 383]. "We have consistently adhered to the standard of 2 Restatement(Second), Torts 442B (1965) that a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, except where the harm is intentionally caused by the third person and is not within the scope of the risk created by the defendant's conduct. Kiniry v. Danbury Hospital, 183 Conn. 448, 455, 439 A.2d 408 (1981); Mehri v. Becker, [164 Conn. 516], 522 [325 A.2d 270 (1973)]; Miranti v. Brookside Shopping Center. Inc., 159 Conn. 24, 28, 266 A.2d 370 (1969)." (Emphasis added.) Tetro v. Stratford, supra. "The reason [for the general rule precluding liability where the intervening act is intentional or criminal] is that in such a case the third person has deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted to him." 2 Restatement (Second), Torts 442B, comment c. "Such tortious or criminal acts may in themselves be foreseeable, [however,] and so within the scope of the created risk . . . ." CT Page 7002 Id.; see also 2 Restatement(Second), Torts 448 and 449.
 Doe v. Manheimer, 212 Conn. at 759 (emphasis in original).
Put another way, an intervening act, even if intentional or criminal, that does not change the nature of the risk created by the defendant's negligence does not break the chain of proximate causation.
Generally speaking, questions of proximate cause and foreseeability are left to the jury. Tetro v. Stratford, 189 Conn. 601,605, 485 A.2d 5 (1983); Coburn v. Lenox Homes, Inc.,186 Conn. at 383. Proximate cause should be decided as a matter of law "only when the mind of a fair and reasonable [person] could reach only one conclusion." Trzcinski v. Richey, 190 Conn. 285, 295,460 A.2d 1269 (1983) quoting Marley v. New England Transportation Co., 133 Conn. 586, 591, 53 A.2d 296 (1947).
In this case, the court cannot conclude that there is no "room for a reasonable disagreement." Doe v. Manheimer,212 Conn. at 757. Under the theories of common law or statutory negligence discussed above, reasonable minds could conclude that the scope of risk created by the negligent sale of a firearm and ammunition encompasses acts that endanger others, but that conclusion may not necessarily be drawn after all the facts of the case are fully established.
Further, the parties' arguments demonstrate a reasonable disagreement. KMart asserts that it could reasonably assume, under the circumstances of this case, that Douglas Pratt would obey the law and not misuse the rifle and ammunition he had purchased. See Hulsman v. Hemmeter Development Corp., 647 P.2d 713, 721 (Haw. 1982). The plaintiff counters that if KMart breached its duty to keep the rifle and ammunition from an ineligible purchaser it cannot avoid liability by claiming that it could not foresee that he would misuse them, see West v. Mache of Cochran, Inc.,370 S.E.2d at 172, citing to the purpose of the Federal Gun Control Act, see pp. 17-19 supra., to keep firearms from those deemed potentially likely to misuse them. See Decker v. Gibson Products Co. of Albany, Inc., 679 F.2d 212, 215 (11th Cir. 1982).
The court concludes that the facts to support or refute the doctrine of superseding cause should be developed in the context of CT Page 7003 the trial of this case. Indeed, as the Appellate Court has stated:
 The doctrine of superseding cause cannot serve . . . as a basis for determining as a matter of law that [a defendant] is relieved of liability. The doctrine must be applied to the facts of a case; D'Arcy v. Shugrue, 5 Conn. App. 12, 26, 496 A.2d 967 [cert. denied, 197 Conn. 817, 500 A.2d 1336 (1985)]; and therefore involves the resolution of questions properly left to the factfinder.
Amendola v. Geremia, 21 Conn. App. at 39.
In conclusion, the trier of fact should determine whether KMart breached any common law or statutory duty of care to the plaintiff's decedent and, if so, whether any intervening act of Douglas Pratt relieves KMart of liability under the doctrine of superseding cause. Accordingly, the defendant's motion for summary judgment is denied.
LINDA K. LAGER, JUDGE