[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Elizabeth Tucker and her father, Lawrence Tucker, both of Guilford, Connecticut, are the plaintiffs in this civil action made returnable to this court on May 21, 1996. The defendants are Jay Kaufman, a police officer, employed by the town of Branford, Connecticut; and the town of Branford, Connecticut.
The complaint seeks compensation for injuries and losses sustained by Elizabeth Tucker and for damage to a vehicle owned by Lawrence Tucker, arising out a collision between the Tucker vehicle, operated by Elizabeth Tucker, and an automobile owned by the town of Branford, and being operated by the defendant, Jay Kaufman, its employee, acting in accordance with his employment.
The first count of the complaint alleges the collision, which occurred on March 14, 1996, on Route 95, eastbound, Exit 58, at Guilford, Connecticut, and the injuries and losses of the plaintiffs were caused by the negligent vehicular operation of the defendant, Jay Kaufman.
The second count of the complaint is drafted to comply with section 7-465 of the General Statutes, which obliges towns or cities in Connecticut to pay on behalf of any employee of such municipality all sums which said employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for physical damages to person or property if the employee at the time of the occurrence, accident, physical injury or damage complained of was acting in the performance of CT Page 4980 his duties and within the scope of his employment and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. The statute requires written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained to be filed with the clerk of such municipality within six months after such cause of action has accrued. Governmental immunity shall not be a defense in any action brought under this section.
Defendants filed an answer and five special defenses. The answer essentially denied any negligence on the part of the operator of the police vehicle and disputed the existence and cause of the physical injuries and property damage complained by plaintiff. It admitted that the town of Branford owned the vehicle, then and there being operated by Jay Kaufman, its employee, in accordance with his employment as a paid police officer of the town of Branford and admitted that the occurrence was not the result of any wilful or wanton act of the defendant, Jay Kaufman, in the discharge of his duties. The answer left the plaintiffs to their proof as to the required statutory notice. The court finds that the plaintiffs' notices, Exhibits F and G, comply with this statute.
Defendants' first special defense alleged that Jay Kaufman was exempted from the motor vehicle statutes and regulations relied upon by the plaintiffs in their complaint pursuant to General Statutes §§ 14-283 and 14-283a, because at the time of the accident Officer Kaufman was operating an emergency vehicle as defined in § 14-283 in that he was operating a police vehicle in the pursuit of fleeing violators. In addition, Officer Kaufman was engaged in a pursuit as that term is defined in §14-283a because he was attempting to apprehend the occupant of another moving vehicle attempting to avoid apprehension by maintaining or increasing his speed or by ignoring the police officer's attempt to stop him. The exemptions afforded by §14-283, which permit the operator of an emergency vehicle to disregard statutes, ordinances or regulations governing direction or movement of turning or turning in specific direction apply to Officer Kaufman because at the time of the accident he was making use of an audible warning signal device and visible flashing or revolving lights in compliance with § 14-283 (c) and was acting in accordance with the town of Branford's General Order No. 90-2, entitled "Pursuit of Fleeing Vehicle", which was enacted pursuant to and in accordance with General Statutes § CT Page 498114-283a
The defendants' second special defense alleges that the defendants are shielded from liability under the doctrine of governmental immunity pursuant to General Statutes § 52-557n(a)(2)(B), because at the time of the accident Officer Kaufman was performing a discretionary public duty in that he was operating an emergency vehicle in a high-speed pursuit in accordance with the pursuit policy enacted by the town of Branford in accordance with General Statutes § 14-283a.
The defendants' third special defense alleges that if the plaintiff were injured and sustained losses as alleged in her amended complaint that her injuries and losses were proximately caused by her own negligence and carelessness in that upon detecting the existence of an emergency vehicle in her immediate vicinity, she failed to immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway and failed to stop and remain in that position until emergency vehicles had passed as required by General Statutes § 14-283e, which failure constituted negligence as a matter of law.
The defendants' fourth special defense alleged that the defendants are not liable to the plaintiff for damages she claims to have suffered as a result of the incident at issue in this case because the plaintiff failed to mitigate her damages in that she failed to follow the advice given to her by her physician.
The defendants' fifth special defense alleges that the plaintiff is not entitled to recover in this case because the accident at issue was sudden and unavoidable.
The plaintiffs filed a reply to these special defenses denying the allegations of each special defense.
For reasons hereinafter set forth, the court finds that the plaintiff has sustained its burden of proof on the principal allegations of the complaint, and the defendants have failed to sustain their burden of proof by a fair preponderance of evidence on any of the special defenses.
The Facts
The collision between the police vehicle operated by Officer CT Page 4982 Kaufman and the vehicle operated by the plaintiff, Elizabeth Tucker, took place at approximately 10:45 P.M., on Thursday, March 14, 1996, on Interstate 95, eastbound, at Exit 58, in the town of Guilford. The collision occurred during a highspeed pursuit of a fleeing vehicle by an emergency police vehicle operated by a Branford police Officer, Jay Kaufman, who was engaged in an authorized pursuit making continuous use of a siren and visible flashing or revolving lights as required by § 14-283 of the General Statutes and General Order 90-2 of the Branford Department of Police.
(Exhibit H).
Section 14-283a of the General Statutes defines pursuit as an attempt by a police officer in an authorized emergency vehicle to apprehend one or more occupants of another moving motor vehicle when the driver of the fleeing vehicle is attempting to avoid apprehension by maintaining or increasing his speed or ignoring the police officer's attempt to stop him. Subsection(b) of the statute mandates that each police department in a municipality with an organized police department shall adopt a policy for handling pursuits. The Branford police department issued General Order 90-2 in order to comply with the statute. Plaintiffs' Exhibit H.
At this time and place the plaintiff was the operator of a vehicle in the immediate vicinity. Ms. Tucker was aware of the visible flashing lights and was attempting compliance with § e of the statute when she was involved in a somewhat bizarre episode.
At about 10:30 P.M., on March 14, 1996, Officer Kaufman was on duty in Branford when he received information that a pursuit of a fleeing stolen vehicle was entering Branford from East Haven on Route 1. The officer proceeded to Route 1 to assist. The fleeing vehicle evaded him and entered I-95 eastbound at entrance 54. Other Branford vehicles joined the chase. Shortly thereafter, the dispatcher informed the chase vehicles that a weapon was involved and that the car was wanted for a shooting. As the chase continued eastbound, Officer Kaufman was the primary chase vehicle, i.e., the police vehicle immediately to the rear of the culprit, chasing the vehicle at speeds of approximately 80 miles per hour in the vicinity of Exit 58. The pursuit had continued eastbound beyond the territorial limits of the town of Branford into the territorial limits of the town of Guilford. According to CT Page 4983 General Order 90-2, section 2, subsection c, entitled "Procedures and Practices", in item 7d, police units were advised not to ordinarily continue outside of the territorial limits of Branford nor should officers assist in pursuits not justified under this policy. The chase began at entrance 54 of I-95 eastbound in Branford, and it ended at Exit 58, I-95 eastbound, in Guilford. The Branford General Order 90-2, section 2, see Item 8, required the dispatcher to notify the town ahead when a Branford police vehicle entered its territorial limits. Dispatcher Carter notified both the State police and Guilford that a pursuit was ongoing. Lieutenant Wiederhold, who coordinated the chase for the Branford police department, was aware that Guilford had covered Exit 58 before the chase got to Exit 58. Officer Kaufman did not have this information, but as a knowledgeable police officer familiar with General Order 90-2, he should have known it was reasonably probable that such coverage would be in place.
At this time and at this place, the plaintiff, Elizabeth Tucker, was the driver of her father's car, driving eastbound on I-95 in the vicinity of Exit 58. Ms. Tucker was alone in her car, returning home from an early dinner in Hartford. She had entered I-95 from entrance 57 and intended to exit at Exit 59. In the vicinity of Exit 58, she passed a tractor trailer and saw in her rearview mirror flashing lights from what she believed to be police cars. At this time she was in the right eastbound lane. She was aware of her obligation to drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway clear of any intersection and stop and remain in such position until the emergency vehicle passed. Because of her proximity to Exit 38, she decided to get off the highway and enter Exit 58 in order to comply with the statute. The court finds this decision on her part to be reasonable in view of the juxtaposition of the exit ramp and her location in the right lane on the highway. Before she could stop or enter the exit, she was hit by the fleeing vehicle in the rear left corner of her vehicle. The fleeing vehicle was operating at a speed in excess of 80 miles an hour without lights when it caused to collide with her vehicle.
The testimony of Sergeant Labonte of the State Police, a reconstruction expert, permits the court to make the following findings based upon the expert's measurements of the final resting positions of all involved vehicles, and pertinent roadway evidence and examination of the vehicles. The fleeing vehicle was traveling eastbound in the left lane of I-95 in front of Officer CT Page 4984 Kaufman. The officer was pursuing this vehicle in the left lane. The fleeing vehicles suddenly turned right unsafely in front of an eastbound tractor trailer to attempt an exit at Exit 58. In so doing, it struck the plaintiff's vehicle in the gore area of Exit 58. The point of impact was 35 feet east of where the gore area begins and intersects with the right travel lane of eastbound I-95 and exit ramp 58 marked lane. Defendants' Exhibit 5.
The impact between the fleeing vehicle and the plaintiff's vehicle caused plaintiff to spin in a clockwise direction out of control in a southeasterly direction for approximately 140 feet down the exit ramp where it impacted the metal guard of the breakdown lane on the right side of the exit ramp. Defendants' Exhibit 5. The defendant Officer Kaufman attempted to turn across the right lane of I-95 to pursue the fleeing vehicle into Exit 58. Confronted with dust and debris from the collision of the plaintiffs vehicle and the fleeing vehicle, Officer Kaufman lost control of his vehicle and skidded approximately 150 feet into the breakdown lane of Exit 58, striking plaintiffs vehicle, which was stopped or almost stopped in the breakdown lane, resting on or against the guardrail. Defendants' Exhibit 5. The impact of this second collision caused the plaintiff s vehicle to roll over down an embankment, coming to rest upside down resting on its roof in a body of water. The plaintiff was in the car at the time of impact and wearing her seatbelt. Water entered the car through the broken windows and filled the interior of the car. Initially, plaintiff was nearly totally immersed in this water. She was, however, able to release the seatbelt and float into the rear seat, right side up, where she managed to find an air pocket, which enabled her to breath. She remained in the water in the car for approximately twenty-five minutes until rescue personnel were able to hydraulically elevate the vehicle so that a door could be opened and Ms. Tucker released from the interior of the car.
Plaintiff received emergency first aid treatment at the scene for shock and treatment for an asthmatic attack, which was precipitated by this incident. Her parents arrived at the scene and took her home. Later that evening, she went to the Middlesex Shoreline Medical Center where she was treated for abrasions of her face, hands, left shoulder and left ear. Her left ear was irrigated, and she was given antibiotics to prevent a bacterial infection from the water she had swallowed while in the car, and then she was released to her home. A few days later, on March 20, 1996, she was seen by her personal physician. The physician prescribed Ultram for her aches and pains and discussed with her CT Page 4985 the possible psychological consequences of her traumatic, life-threatening event. These consequences included bad dreams, panic reactions, depression and/or preservation about the incident (recurrent involuntary thinking of same). The plaintiff did experience such symptoms and consulted a psychiatrist on three occasions; specifically, March 22, 1996, March 29, 1996 and June 27, 1997.
Dr. Grove, the psychiatrist, noted that before the incident, plaintiff had a history of asthma, which was quiescent prior to the accident and that subsequent to the accident she was required to use an inhaler on a fairly regular basis. The plaintiff had no psychiatric history prior to this incident. In her history given to the doctor, the plaintiff stated that while trapped in the water-filled vehicle, she became anxious and close to panic. She feared that death was at hand and almost had a complete breakdown. She also told the doctor that immediately following the incident, she began experiencing symptoms of post-traumatic stress syndrome. Her mind focused on the likelihood that she could have died in the incident from head trauma, explosion of gasoline or drowning. After the accident, she felt profoundly out of control and suffered from recurrent and intrusive, frightening recollections of the incident, loss of sleep, inability to concentrate.
These symptoms persisted for some period of time, but at the time of trial were mild in intensity. The psychiatrist recommended medication and abreaction crisis-oriented therapy, but the plaintiff resisted both medication and the therapy and decided to return to work and to school. At the time of the incident, the plaintiff worked part-time in a restaurant and commuted to Fairfield University where she was in her senior year. The plaintiff lost about one week of wages immediately after the incident. She returned to Fairfield at the conclusion of the spring break or some four or five days after the incident and graduated with honors in the spring of 1996. In the fall of 1996, she began a master's degree program at New York University in an interdisciplinary program with an emphasis on the Italian Renaissance. From the time she graduated from college until the present time, she has worked full-time as a restaurant employee and has commuted to New York University by train two days per week.
Dr. Grove rendered an opinion that the plaintiff has suffered from an acute, post-traumatic stress disorder, which based upon CT Page 4986 reasonable medical and psychological probability was caused by the collision between the Branford police vehicle and her vehicle. He recommended weekly therapy treatment for a period of six months inasmuch as he believes she is still vulnerable to a delayed exacerbation of her symptoms. The plaintiff resisted all therapy immediately after the accident and was able to maintain control of her career plan while working steadily. The court concludes from her testimony in court and her history since March 14, 1996, that it is not likely that she would accept further therapy, which the psychiatrist estimates would cost about $3,900 for one session per week for about six months. In the collision, the plaintiff received relatively minor physical injuries, which disabled her for a short period of time. She did, however, sustain a psychological injury as a result of this traumatic event. Based on all the evidence submitted, the court cannot reach a conclusion by the preponderance of the evidence that the injuries whether physical or psychological are permanent in nature.
The Cause of the Collision
Officer Kaufman's testimony at the time of trial permits the court to conclude that his vision was obscured when he turned across the right lane in front of an eastbound tractor trailer in order to pursue the fleeing car into Exit 58. At that time, he was traveling at approximately 80 miles per hour, entering a ramp, which was limited to a 25 mile per hour entry speed. The officer's vision was further obscured by the dust and debris thrown up by the initial collision between the car of the fleeing miscreant and the plaintiff's car. The officer lost control of his vehicle after entering the ramp when he applied his brakes to assert control; the brakes locked, causing him to skid 150 feet into the vehicle of the plaintiff. Officer Kaufman was authorized to exceed the speed limit imposed by law only so long as he did not endanger life or property before so doing. § 14-283 (b). Due regard for the safety of all persons was required of him by § 14-283 (d). The officer was negligent in that he failed to keep and maintain a proper lookout with regard to his speed and with regard to the weather, traffic and road conditions there obtaining. The officer was also negligent in that his speed exceeded the speed which a reasonably prudent police officer engaged in a high speed chase would have maintained in making such a sudden turn across traffic. The officer was negligent in the operation of his vehicle when he failed to maintain the control of his vehicle when he attempted to enter Exit 58, he CT Page 4987 failed to maintain the control that a reasonably prudent police officer engaged in a high speed chase would have maintained under the five circumstances that there existed.
In the second special defense, defendant alleges that they are shielded from liability under the doctrine of governmental immunity pursuant to General Statutes § 52-557n(a)(2)(B) because at the time of the accident Officer Kaufman was performing a discretionary public duty in that he was operating an emergency vehicle in a high speed pursuit in accordance with the pursuit policy enacted by the town of Branford in accordance with the General Statutes § 14-283.
In his brief the defendant does not specifically refer to this statute but instead claims immunity under § 14-283. General Statute § 52-557n(a)(2)(B) grants a measure of immunity to political subdivisions of the state only and makes no reference to employees such as Officer Kaufman. Sansone v. Boardof Police Commissioners, 219 Conn. 179, 185, 193 (1991).
The effect of § 14-283 is "merely to displace the conclusive presumption of negligence that ordinarily arises from the violation of traffic rules." Tetro v. Stratford,189 Conn. 601, 609 (1983). "The statute does not relieve operators of the emergency vehicles from their general duty to use due care for the safety of others." Id. General Order 90-2, the established pursuit policy of the Branford Police Services, imposes a similar obligation upon members of the Branford Police Service.
In Sansone, the court noted that § 52-557n was enacted as part of the Tort Reform Act of 1986. The Act does not refer to § 7-465 and it is "unclear whether the limitation of liability of political subdivisions contained in the section is intended to supercede the indemnification statute, § 7-465. Id. 188. In further language of the opinion, the court said, p. 192, "We do not construe section 52-557n to bar a plaintiff from asserting causes of action in tort against those individuals whose actual conduct was a proximate cause of the injury. " Id. 193. Sansone v. Board of Police Commissioners, 219 Conn. 179, 185
(1991).
Generally, a municipal employee is liable for the misperformance of a ministerial act but has a qualified immunity in performance of governmental acts, which are performed wholly for the direct benefit of the public and are supervisory or CT Page 4988 discretionary in nature. . . . In contrast, ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of a judgment or discretion. Officer Kaufman claims he was engaged in pursuit of a felony vehicle. The court finds that such was the case. In conducting the pursuit, the officer acted in accordance with procedures set forth in the town of Branford, General Order No. 90-2, enacted pursuant to General Statute § 14-283a. The court has previously noted that the officer violated several of the provisions of § 14-283a. Engaged in such a pursuit, Officer Kaufman was fulfilling a discretionary public function. Ordinarily, a defendant employee of a political subdivision is entitled to judgment as a matter of law if the duties allegedly breached require the exercise of judgment or discretion in some measure by the governmental employee. Evon v. Andrews, 211 Conn. 501 at 507. Evon points out that the immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. . . (2) where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. . . (3) where the alleged acts involve malice, wantonness or intent to injure rather than negligence. (Citations omitted.) Id. 505. The defendant argues that since none of these exceptions applies, the actions of Officer Kaufman should be given qualified immunity. The court disagrees.
In the court's view, as previously stated, § 14-283
merely displaces the conclusive presumption of negligence that ordinarily arises from the violations of traffic rules. The statute does not relieve operator of emergency vehicles from their general duty to exercise due care for the safety of others. The express requirement of the statute, section (d) that "the provisions of this section shall not relieve the operator of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property" when considered in conjunction with the indemnification statute § 7-465 and the case law expounded in Tetro and Sansone compels the court to conclude that Officer Kaufman did not enjoy qualified immunity on March 14, 1996, when his vehicle collided with the vehicle of plaintiff and proximately caused the injuries, losses and damages sustained by the plaintiff. CT Page 4989
After a careful review of the evidence, the court cannot find that the actions of the plaintiff contributed in any way to her own injuries and losses. While it is apparent that the activity of the fleeing felon who first struck the plaintiff s car contributed to the ultimate result, this does not absolve the defendants. More than one proximate cause may result in any harm suffered. An actual cause that is a substantial factor in the resulting harm is a proximate cause of that harm. Coburn v. LenoxHomes, Inc., 186 Conn. 370, 382, 384 (1982). In this case the court finds that the negligence of Officer Kaufman created or increased the risk of a particular harm and was a substantial factor in causing that harm.
In the posttrial memorandum, the defendant asserts that the plaintiff was not injured as a result of this accident or even if the plaintiff were injured as a result of the accident, the defendants are not liable because she failed to mitigate her damages. Defendant points out that Dr. Grove testified that despite his recommendation that the plaintiff undergo a course of psychotherapy and that she take anti-anxiety medication, she adamantly refused to follow his advice. The doctor also testified that had the plaintiff followed his advice, it was more likely than not or at least that she would have recovered completely in three to six months. The court has already referred to the physical injuries which the plaintiff sustained in this accident and termed them as relatively minor and noted that she made a full recovery from these physical injuries. Based upon all of the evidence offered, however, the court concludes that the plaintiff received a severe shock to her nervous system, which resulted in a condition described as post-traumatic stress disorder. While it is true that if she had accepted therapy she might have recovered within three to six months without any further ill effects, the court is not attempting to compensate her for any permanent ill effects but finds that she is legally entitled to fair, just and reasonable compensation for the injuries she did receive and endure for the length of time it would have taken for her to recover if she had followed the doctor's advice. The court has also made a finding that in all probability the plaintiff would not seek any further medical or psychiatric treatment such as recommended by Dr. Grove. Subject to these limitations, the court feels it is entirely appropriate to award compensation to the plaintiff and to her father for the injuries and losses which they did sustain. Elizabeth Tucker incurred medical expense or economic damages from the Middlesex Hospital in the amount of CT Page 4990 $197.12; from Dr. Angoff, $70; for the services of Dr. Grove, $1050; for lost wages, $84.23. These losses total $1,401.35. The court concludes that fair, just and reasonable compensation for Ms. Tucker's noneconomic damages would be the sum of $12,000. Accordingly, judgment may enter on the first count of the complaint for Elizabeth Tucker in the amount of $13,401.35. The plaintiff, Lawrence Tucker, sustained damages to his automobile as a result of the total destruction of the value of the automobile in the amount of $2,950, and for additional costs of towing and storage, $850; for a total loss of $3,800.
Judgment may enter for the plaintiff, Lawrence Tucker, in the amount of $3,800.
Dorsey, J. Judge Trial Referee